HOOKER *against* THE NEW-HAVEN AND NORTHAMPTON COMPANY.

A corporation was created, by the legislature of this state, for the purpose of constructing and maintaining a canal within certain *termini,* with all necessary waste-wiers, and providing for the appointment of a board of commissioners, with power to designate the route of the canal, with all the works

connected therewith, and to appraise the damages, giving notice to the parties interested. The canal and waste-wiers were constructed and used, under the direction of such commissioners, in a prudent, judicious manner; the waste-wiers being necessary to discharge the surplus water from the canal that it might be capable of use. At a time when there was surplus water in the canal, and the banks of the canal were in imminent danger, the company, to protect those banks, and keep the canal navigable, voluntarily, and with the consent of the commissioners, used one of the waste-wiers, making the water of the canal pass through it and run over a portion of *H's* land, washing out and carrying away some parts thereof, but doing as little injury thereto as possible; which injury was the natural and unavoidable consequence of the proper use of the canal and waste-wier. In an action on the case, brought by *H* against the corporation, for this injury, it was held, that as the land of *H* was not taken or paid for, under the provisions of the charter *of incorporation, he was entitled, in this action, to recover damages for such injury.*

In coming to this result, the court held, 1. that this corporation, though its uses may affect the public interest, is not a public, but a private corporation, and is subject to the same liability as an individual owner; 2. that a grant of exclusive privileges in derogation of public right, is to be construed strictly; 3. that the cases in which it has been decided, that commissioners or trustees appointed to execute a public trust or duty, were not liable for damages resulting from acts done by them in the execution of such trust or duty, are not applicable to a case where the injurious acts were done by the corporation, for the protection of its own property; 4. that the consent of the commissioners to the use of the waste-wiers in this case, constituted no justification, inasmuch as the charter gave them no power to direct in what manner it was to be used; 5. that this power was not implied in the power expressly given to the commissioners to direct the route and construction of the canal; 6. that it was not implied, on the ground of its being the necessary means of executing the authority given; 7. that the commissioners derived no authority from the charter to make compensation for the injury done to the plaintiff in this case; 8. that the plaintiff's remedy was not by bill in chancery, nor by action of *assumpsit.*

*Hartford,*
*June, 1843.*

Hooker
*v.*
New-Haven
and Northamp-
ton Company.

A new trial having been granted in this case, (14 *Conn. Rep.* 174.) the defendants pleaded anew. To the first count, which is the one stated 14 *Conn. Rep.* 147. they pleaded *Not guilty.* To the second count, which was similar to the first, except that it averred that the defendants voluntarily opened the banks of the canal, and conducted the water into and across the lands of the plaintiff, whereby the same was washed and carried away, &c. several pleas were pleaded. These pleas, though varying somewhat in form, are substantially the same; all justifying the acts done by the defendants, as authorized under their charter of incorporation, and none of them denying, but some expressly admitting, that the acts

*Hartford,*
June, 1843.
————
Hooker
*v.*
New-Haven
and Northamp-
ton Company.
were done voluntarily, but in necessary protection of the navigation and banks of the canal, which were in imminent danger, by reason of the surplus water in the canal ; shewing that the canal was constructed under authority and by direction of commissioners appointed by the act of incorporation ; that the waste-wiers therein were made by like direction, to discharge said water ; that they were necessary for that purpose, and were used with the consent of the commissioners ; that they were built and used in a prudent, judicious manner, that the water might flow off more rapidly ; and that, when the injury complained of was done, the waste-wier in question was necessary for the purpose of letting off surplus water then in the canal, that it might be capable of use ; and that the defendants used said waste-wier for said purpose, and for no other, doing as little injury to the plaintiff as possible ; and thereby said water was made to pass through said waste-wier, and to run over some portion of the plaintiff's land, washing out and carrying away some parts thereof, which was the obvious, natural and unavoidable consequence of the proper use of said canal and waste-wier.

The plaintiff replied to the special pleas of the defendants; and the defendants demurred specially to such replications, assigning numerous causes of demurrer ; but as the case was argued and decided principally upon the sufficiency of the pleas, it is not necessary here to state the matters set forth in the replications, or the exceptions taken thereto.

At the term of the superior court held in *January,* 1842, *Williams,* Ch. J. presiding, the case was reserved for the consideration and advice of this court.

*Toucey* and *T. C. Perkins,* for the plaintiff, contended,
1. That the replications were sufficient, both in substance and in form.

2. That the matters alleged in the pleas of the defendants constituted no justification of the acts complained of. That the plaintiff has sustained an injury for which he is entitled to redress, is established, by the former decision. 14 *Conn. Rep.* 146. It was also settled, by that decision, that the approval by the commissioners of the canal, including this waste-wier, did not justify the injury complained of. But if these questions were now open, the plaintiff insists, first, that

Hartford,
June, 1843.

Hooker
v.
New-Haven
and Northamp-
ton Company.

the legislature, under the constitution of the state, (*art.* 1. *sec.* 11.) had no power to authorize the acts complained of.

Secondly, if the legislature had the power, they have not exercised it, in this case. The canal, including the waste-wier in question, was constructed according to the directions of the commissioners. It existed many years, without damage to the plaintiff. His land did not adjoin the canal. No assessment was, therefore, made, or could be made, in his favour. At length, the defendants, to save their own works from injury, voluntarily let the water out of the canal, thereby washing away the plaintiff's land; which was done without the order or knowledge of the commissioners. The charter makes no provision for a case of this sort. No compensation has been made.

But thirdly, the property of another cannot be taken for *private* use, even where compensation is made. Here, the injury was done by the defendants, to save their *private* property from injury.

3. That an action on the case is the proper remedy. In the first place, the commissioners could not redress the injury in question ; it not being within the scope of their powers. Secondly, if they could, this would not take away the common law remedy. *The Susquehannah and Bath Turnpike Road Company* v. *The People*, 15 *Wend.* 267. 268. *Chittenden* v. *Wilson*, 5 *Cowen* 165. *The Hartford and New-Haven Rail-Road Company* v. *Kennedy*, 12 *Conn. Rep.* 499. 517. In a case of this sort, a corporation is not privileged beyond a private person. *Lowell* v. *The Boston and Lowell Rail-Road Corporation*, 23 *Pick.* 24. 30.

*Hungerford* and *W. W. Ellsworth*, for the defendants, contended, 1. That the replications were insufficient.

2. That the charter furnishes the plaintiff with an adequate remedy, by appraisal of the commissioners. 5th *sect.*

3. That the charter remedy must be pursued ; or relief must be sought in chancery : an action for tort will not lie. *Stevens* v. *Proprietors of Middlesex Canal*, 12 *Mass. Rep.* 466. *Rogers* v. *Bradshaw*, 20 *Johns. Rep.* 735. *Jerome* v. *Ross*, 7 *Johns. Ch. Rep.* 315. *Wheelock* v. *Young & al.* 4 *Wend.* 647. *Calking & al.* v. *Baldwin, Id.* 667. *Lebanon* v. *Olcott*, 1 *N. Hamp. Rep.* 339. *Woods* v. *Nashua Manu-*

Hartford,
June, 1843.

Hooker
*v.*
New-Haven
and Northamp-
ton Company.

*facturing Company*, 4 *N. Hamp. Rep.* 527.    *Dodge* & al. v. *Essex County Commissioners*, 3 *Metc.* 380.    *Hollister* v. *The Union Company*, 9 *Conn. Rep.* 436.    *Charles River Bridge* v. *Warren Bridge*, 11 *Pet.* 170, 1.

4. That the damages in this case, are too remote and consequential, to entitle the plaintiff to any remedy.    Most of the authorities above cited, and many others, support this position.

5. That the case of *Burroughs* v. *The Housatonic Rail-Road Company*, 15 *Conn. Rep.* 124. covers the whole ground claimed by the defendants.    That case establishes these propositions : that no action of tort lies for a rightful act intentionally done ; *p.* 27, 8.—that there is no difference between an original and an acquired interest or right ; *p.* 129.—that the consequences of a lawful act do not make it unlawful ; nor is the greater or less probability of such consequences, material.    Here, all that has been done by the defendants, was lawful ; and no injury was by them intended, or contemplated.

WILLIAMS, Ch. J.    We have not been able to see how the facts stated in the pleas present the case more forcibly for the defendants, than the facts found by the jury upon the former trial.    In both cases, the authority derived by the act of incorporation, and by the directions or consent of the commissioners as to the construction of the canal and waste-wier, are the same.    In neither case, is it pretended, that the plaintiff's land was taken for the use of the canal, or any injury to it contemplated, by the commissioners, or damages assessed therefor ; and in neither case, is it claimed, that there was any neglect on the part of the defendants, in constructing their dam, or suffering the waters to accumulate.    But in both cases, it appears, that the defendants conducted prudently and judiciously, so far as regards the canal, and did no injury to the plaintiff's land, except the voluntary turning the water of the canal through the waste-wier, thus conducted upon and over and across the plaintiff's land, injuring the same no further than was necessary to protect the canal and its navigation from imminent danger, in consequence of such surplus water.    The third plea speaks of using the waste-wier with consent of the commissioners.    We do not suppose any thing more is intended by this, than the consent

which may be implied from thus placing the waste-wier there. If any thing more is intended, we can only say, it no where appears that the commissioners ever knew or supposed, that these waters would flow upon and injure the plaintiff's land, or meant to consent to such an event; or if they did, no clause in the charter has been pointed out, showing us where any such authority was given to the commissioners. This has not been claimed: we only allude to it as a point of difference in the case from what appeared in the former.

We cannot perceive any important facts presented in these pleas, but what was before considered as part of the defendants' justification, except that which regards the forum to which the plaintiff should apply. ❨In both cases, the great question is, whether the act, and the doings of the commissioners under it, justified the defendants, a private company, incorporated for a public object, voluntarily to injure or destroy the plaintiff's land, to protect their own property, without taking the land, or paying for the same, in the manner provided for making compensation under that act. ❩

In the former case, we were of opinion it could not be done; and nothing we have heard now has induced us to change that opinion. We did not believe, that the legislature had made, or intended to make, such a grant. When we considered the terms of our constitution, that private property should not be taken without compensation for public uses, we supposed we could not refuse to say, with a court who were not limited by such an instrument, that the canal company had not paid for, and ought not therefore to obtain, under the act, the right *to prevent the land-owner from enjoying his own property*—*Dudley Canal Co. v. Grazebrook,* 1 *B. & Adol.* 59. (20 *E. C. L.* 349.) even although they had not themselves taken it; and that the *English* cases cited or alluded to, did not contain such a principle. Those were actions, not against a corporation deriving a benefit from an injury to an individual, but suits against commissioners or trustees, appointed to execute a public trust or duty, representing the public, and having themselves no personal interest therein.

In such cases, the court say, that if they act fairly and honestly, within their jurisdiction, and not arbitrarily or maliciously, but according to the best of their judgment, they shall not be responsible in damages for a remote consequen-

*Hartford,*
*June, 1843.*

Hooker
*v.*
New-Haven
and Northampton Company.

HARVARD LAW LIBRARY

*Hartford,*
*June, 1843.*
————————
Hooker
*v.*
New-Haven
and Northamp-
ton Company.

tial injury resulting from such acts. Such person is not a volunteer : he executes a duty imposed upon him by the legislature, which he is bound to execute. He exercises his best skill, and diligence, and caution ; and is not liable for an injury, which he did not, and could not, foresee. Such was the case of *Sutton* v. *Clark,* 6 *Taunt.* 29. So too in *Boulton* v. *Crowther,* similar language is used. *Holroyd,* J., says, the act was done by them in the execution of a public duty, which they had a competent authority to do. 9 *E. C. L.* 231. So too, in the state of *New-York,* it has been determined, in such cases, that the canal commissioners, acting within their jurisdiction, cannot be trespassers. *Rogers* v. *Bradshaw,* 20 *Johns. Rep.* 735. *Jerome* v. *Ross,* 7 *Johns. Ch. Rep.* 330. *Wheelock* v. *Young & al.* 4 *Wend.* 647. Persons in this situation are considered rather in the light of judges, to whose discretion much is allowed, and who are liable only for the abuse of their trust. And those cases prove nothing more than that the commissioners in this case would not be liable for this act. But the case has not yet been produced, ( unless it be that of *Hollister* v. *Union Company,* 9 *Conn. Rep.* 436. which may fairly be placed on other grounds, ) where individuals or corporations, who are to derive a profit to themselves from an injury done voluntarily to others, are to be protected in doing such an injury, without making compensation, unless done by the power of an unrestricted legislature. We do not see how the agents of a turnpike or canal company are to be ranked with public agents; or how it can be said the companies they represent, are not volunteers, or not to receive the profits. We know, indeed, that the public have an interest in a turnpike, or rail-road, or canal, so that lands taken for such uses, may fairly be said to be taken for public uses, as well as other highways. But does it therefore follow, that such companies may take, or even destroy, private property, without compensation ?

We do not mean to say, however, that injuries may not be done to private property, so necessarily connected with the making of such roads or canals, as will not form a ground of action, as the stopping drains from lands which the canal passes through; for, in such cases, it must, says Judge *Thompson,* be presumed, that this fact must have been taken into consideration in the appraisal of damages. *Steele*

v. *Western Inland Lock Navigation Company*, 2 *Johns. Rep.* 283.

Nor do we deny, that there are remote consequential injuries, for which no action will lie ; as where, by reason of some public improvement, the value of property is greatly affected, but the property is left uninjured ; as where a new road is opened, so as to turn the travel from a former road, by means of which rents are much diminished ; or where a turnpike road or toll-bridge is so near to another as greatly to affect the toll of the former proprietors ; or where a rail-road is laid by the side of a turnpike road. *Mohawk Bridge Company* v. *Utica & Schenectady Rail-Road Company*, 6 *Paige* 554. However just it might be that the public should offer some compensation to the sufferers, no action will lie against the new company. So too, it has been held, that where the commissioners on the *New-York* canal, constructed a basin in the *Hudson* river, by reason of which a wharf in the river was much affected in value, and the passage to it much impeded, no action would lie against the canal commissioners. *Lansing* v. *Smith*, 8 *Cow.* 146. This may have proceeded upon the ground that the injury was too remote ; or that the state had a right to controul and improve the navigation of the river, in a manner best adapted to public uses ; or that the commisioners were not liable.

Neither do we intend to deny, that an authority to execute a great public work, carries with it an authority to use the appropriate means. 3 *Met.* 380. We held otherwise in *Burroughs* v. *Housatonic Rail-Road Company*, 15 *Conn. Rep.* 124.

But we do intend to say, that we see nothing stated in these pleas, which shows, that the damage done this plaintiff, was inseparably connected with the construction of this canal ; or that other means could not have secured its continuance. If the plaintiff's land was wanted as a reservoir for the water of the canal, we see no difficulty in the defendants, under the 5th section, entering into and taking possession of the land, as necessary for the improvements intended by the act, making compensation therefor, as in other cases. It does not seem to have been supposed, that it would be needed ; otherwise, we cannot believe, that the commissioners would have neglected to make some entry or return thereof, and appraise damages therefor. The commissioners indeed,

*Hartford,*
June, 1843.

Hooker
*v.*
New-Haven
and Northamp-
ton Company.

directed this waste-wier, doubtless supposing that it would be sufficient to relieve the canal from surplus water, without injuriously affecting the lands of others. The manner of using it, after it was built, was not a subject of their directions; and when the third plea avers, that it was used with their consent, unless some authority is given to them in the act by which they are authorised to direct not only as to the route of the canal and its construction, but the manner in which it was to be used, we see not how their consent to this act can be a justification for the defendants. Indeed, we did not understand, that it was claimed in any point of view, other than as such use was inseparably connected with the mode of construction, and was implied from the very circumstance of placing the waste-wier there; and it is said, that without this, the canal would be unfit for the purposes for which it was made, the navigation would be impeded, and the canal would be in imminent danger; to prevent which, the charter must be supposed to authorise them to guard themselves. It is not claimed, that any express authority is given to the company to protect their works, at the expense of injury to others; but we are called upon to say, that it is implied, upon the principle that an authority to do an act, necessarily implies that the grantee may use the means necessary to accomplish it. Had the legislature expressly given such a right to this corporation, without providing any compensation to the party injured, it would have demanded our serious consideration, whether such an act was constitutional. But we are now not only required to say, that such a grant would be constitutional, but also to infer, that such an authority was intended to be granted from the mere fact that a canal is authorised; for there is nothing here to show, that by the erection of other waste-wiers, or in some other way, provision could not have been made for turning this surplus water, without affecting the plaintiff's property; much less is it pretended, that no provision could be made for compensation, to a party injured thereby. We do not, therefore, think we are bound to give such a construction to a legislative grant as would subject the legislature to the imputation of great injustice, if not a violation of constitutional rights, where such an intent is not clearly expressed. In *England*, it would seem, that where land was inundated by a canal, the compensation

is made for the damage sustained, either upon the common principles of justice, or because the act of parliament requires it. *Trefford* v. *The King*, 8 *Bing*. 204. ( 21 *E. C. L.* 274.) And we are not prepared to say, that private property is not secured as well in this state as in *England*. And it is a general rule, that in govermental grants, nothing passes by implication. *Charles River Bridge* v. *Warren Bridge*, 7 *Pick*. 461. *S. C.* 11 *Pet.* 420. *Sprague* v. *Birdsall*, 2 *Cowen*, 419. *Dyer* v. *The Tuscaloosa Bridge Company*, 2 *Porter's Alabama Rep*. 296. 6 *Paige* 565. And although some *dicta* have fallen from judges, that where a great public object was in view, a liberal construction should be given to the grant, we know of no case where a private company, though the object was a public one, were permitted, for the better securing their own property, not merely to impair the value, but to destroy the property of another, without compensation; and a grant of exclusive privileges in derogation of public rights, is to be construed strictly. 6 *Paige* 565.

The maxim *Sic utere tuo ut alienum non lædas*, is as applicable to one claiming under legislative grant as to one claiming under private grant; (5 *Cowen*, 156.) to public corporations, as to individual citizens. In *Dudley Canal Company* v. *Grazebrook*, 1 *B. & Adol.* 59. ( 20 *E. C. L.* 348.) *Bayley*, J. says, this is a well known legal maxim. Its application in the present case, cannot be disputed. And a court in an adjoining state, to whose opinions we look with great respect, says, that corporations, as well as individuals, are bound so to use their rights as not to injure individuals. *Lowell* v. *Boston & Lowell Rail-Road Company*, 23 *Pick*. 30. When therefore, *Littledale*, J. says, "I agree that a private individual must so use his land as not to injure that of another; but the private individual acts for his own benefit, and he ought not to obtain a benefit at the expense of his neighbour;" it must be taken in reference to the subject matter of which he speaks—a suit against trustees; for he goes on to add: "But where an act of parliament vests a power in trustees or commissioners, to be executed by them, not for their own benefit, but for that of the public, and gives no compensation for a damage resulting from an act done by them in the execution of that power, the legislature must be taken to have intended, that an individual should not receive any compensa-

*Hartford,
June, 1843.*

Hooker
*v.*
New-Haven
and Northampton Company.

*Hartford,*
June, 1843.

Hooker
*v.*
New-Haven
and Northamp-
ton Company.

tion for a loss resulting to him from an act so done for the public benefit." He goes so far as to say, that had the act authorised them to take the land, it is doubtful whether an action would have lain. *Boulton* v. *Crowther,* 2 *B. & Cres.* 711. ( 9 *E. C. L.* 230, 1. ) The judge, then, does not mean to impugn the maxim above cited ; for he says, he uses the term " private individual " in opposition to a trustee or public agent; and he holds, that such person shall not obtain a benefit at the expense of his neighbour. Now, these defendants are not trustees or public agents, though they are in some measure connected with the public. The public are not interested in the question whether they use one or more wastewiers, whether they make compensation for the land destroyed, or destroy it without.

These defendants are not a public corporation. They are not such as are founded by the government for public purposes, and where the whole interest belongs to the government. If a bank is created for its own uses, the whole of whose stock belongs to the government, it is, in the strictest sense, a public corporation; but when owned by private persons, it is a private corporation, though its objects and operations partake of a public nature. The same doctrine may be affirmed of insurance, canal, bridge and turnpike companies: in all these cases, the uses may, in a certain sense, be called public; but the corporations are private, as much so indeed as if the franchise was vested in a single person. *Per Story,* J. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 669.

This private corporation, whether it consists of one or more individuals, must then stand upon the same ground as individuals who have not an act of incorporation, and have no more right to violate the great principle of natural equity contained in the above maxim. And when a grant is made to a corporation which is a public corporation, as to the city of *New-York,* for an object of the greatest importance, but for the private advantage and emolument of the city merely, though the public derive a common benefit therefrom, the corporation, *quoad hoc,* are to be considered a private corporation. *Bayley* v. *Mayor of New-York,* 3 *Hill* 539. And though the case itself was subject to other considerations than this, yet the principle laid down by the court, that such corporations are liable to the discharge of any duty or obligations

which an individual owner would be subject to, is a complete answer to the objection that this is a corporation.   2 *Hill* 543. That a corporation has no more right, under a legislative grant, than an individual, to affect injuriously the property of their neighbour, seemed to be taken for granted, by the chancellor, in the case of *The Hudson & Delaware Canal Company* v. *New-York & Erie Rail-Road Company*, when he says, if it is impossible to construct the road by the *Delaware* route, without destroying the navigation of the canal, and the valuable interests connected therewith, the defendants cannot be permitted, at least without provision is made for compensation, to proceed and make their road.   9 *Paige* 327.   Without going more at large into this part of the case, we only add, that we have heard nothing to cause us to doubt the correctness of the opinion before given in this case, that the defendants, having, for their own benefit, voluntarily done an act materially affecting the lands of the plaintiff, without claiming to take them, or make compensation for them, under the charter, are not justified in so doing, but must, in some way, be responsible for the injury.

*Hartford,*
June, 1843.

Hooker
*v.*
New-Haven
and Northampton Company.

The defendants say, that if another mode of satisfaction is given by the charter, that mode must be taken, and trespass will not lie.   *Lebanon* v. *Olcutt*, 1 *N. Hamp. R.* 339.   *Calking* v. *Baldwin*, 4 *Wend.* 667. 671.   And we are inclined to think that proposition is correct, though it seems to be doubted.   *Crittenden* v. *Wilson*, 5 *Cowen* 167.   But in such a case, it must devolve upon the defendants to show that such a remedy is given by the act.   It is not enough to say, that the subjecting of the defendants to actions of trespass, is a burdensome and expensive remedy.   The question is, whether another is provided under this statute incorporating the defendants.   We have listened with attention to the arguments of the defendants' counsel, and carefully examined the charter to find the authority given to the commissioners, which would reach this case; but we have not been able to find any such authority.   The only sections under which it can be claimed, are the 4th, 5th and 6th.   *Priv. Stat.* 301, 2.   The 4th directs the appointment of commissioners, and prescribes their duties, which are, to survey and lay out the canal and the works connected therewith, to notify the persons whose lands are taken, to assess damages therefor, to make entries

*Hartford,*
June, 1843.
———
Hooker
*v*
New-Haven
and Northamp-
ton Company.

of all their determinations and decisions, whether they allow or disallow damages. When completed, by the 21st section, they are to return their report to the secretary of state, and their report of expenses to the comptroller. Section 5th directs, that the corporation may, with the consent and approbation of the commissioners, enter upon and possess all lands and water necessary for the prosecution of the improvements intended by the act of incorporation, doing no unnecessary damage; and the commissioners shall appraise the damages sustained thereby, unless voluntarily relinquished. This, it is believed, is an outline of the duty of the commissioners, until the canal is completed. Now, it cannot be claimed, that here is given any authority to appraise lands not taken or entered upon for the use of the improvements here included; nor any authority to take lands not appraised. And as the plaintiff's lands were never reported by the commissioners, as necessary for this purpose, and were never taken for this purpose, and the defendants now claim that they are not at this moment taken, only remotely affected; we cannot see, that the commissioners were ever authorised under that section to appraise them; or, if application was now made, that they could appraise them.

But if we consider that this land is taken, and that the commissioners may, at any time, make an appraisement, a question arises, whether as this has not been done, the defendants are justified at all, because it might have been done, or even if it may now be done. In such a case, before a private corporation can take property of individuals, they must pursue the letter of the law upon which they found the claim ; and therefore, in this case, the defendants ought to have proved, that a survey was made, that they have made their entry, and manifested, in a proper manner, that they were about to take the property and procure the appraisement of it, and perhaps also make compensation for it. In *New-York*, it has been decided, that where the defendants have not followed the directions of the act relative to the compensation to be made, to the owners of the land through which a turnpike road has been made, they were trespassers. *The People* v. *The Hillsdale and Chatham Turnpike Company,* 2 *Johns. Rep.* 190. And although the same court has held, that where the act expressly allows the commissioners to assess the damages, on application of either

*Hartford,*
June, 1843.

Hooker
*v.*
New-Haven
and Northamp-
ton Company.

party, trespass cannot be sustained ; yet they do not deny the authority of the former cases, but rely upon the particular words of that statute. *Calking* v. *Baldwin,* 4 *Wend.* 667. The defendants, then, having neglected to apply to the commissioners, can have no claim to take their land under these sections of the statute. Besides, all these provisions are for prospective damages, not damages that have already accrued.

Is this then within the 6th section of the act? That certainly relates to cases arising after the canal was constructed, and to unforeseen accidents arising to the canal or its navigation ; to repair which it authorises the company to enter upon contiguous lands, to dig and carry away stone and gravel, and other materials, except timber, necessary and proper for such reparations, doing as little damage as the nature of the case will admit ; and if the owners claim damages, they shall be assessed by the commissioners. The legislature say, that to repair an injury to the canal already incurred, you may take the property of individuals. The defendants call upon the court to say, that therefore, for an apprehended injury to the canal, they may injuriously affect the property of others ; and that as power is given to the commissioners to appraise damages resulting from property actually taken and thus affected, because under authority of the act, the commissioners are empowered to appraise damages for an injury to property voluntarily committed, for the purpose of protecting their own. We do not feel authorized to extend a power of this kind by implication. The legislature, for public purposes, have endowed a private corporation with extensive powers, for such objects as they deemed necessary. It is not enough to say, the privilege in this case is equally necessary ; nor can we say, because this company may take gravel, and stone, and earth, to repair damages incurred, and cause them to be appraised, that therefore they may destroy a field, by inundating it ; and then call upon the commissioners to appraise that damage. If no provision is made for taking or using lands for such purposes, which had not been originally taken, of course there can be none for the appraisal of them.

This view of the subject makes it unnecessary for us to consider a question which may arise upon that section, whether a provision of the kind, without actual payment,

*Hartford,*
*June, 1843.*

*Hooker*
*v.*
*New-Haven*
*and Northamp-*
*ton Company.*

will be constitutional ; that is to say, whether the defendants can have a right to take property of others for their use, and leave them to get their pay, as the case may be, from an insolvent corporation.    We know that in the state of *New-York,* it has been held, that when the state becomes in fact responsible, though the act does not make them so, this may be done.    *Jerome* & al. v. *Ross,* 7 *Johns. Ch. R.* 315. 330. *Wheelock* v. *Young* & al. 4 *Wend.* 647. 649.    We know, too, that in later cases, this has been doubted.    *Bloodgood* v. *The Mohawk and Hudson Rail-Road Company,* 18 *Wend.* 9. We do not feel called upon to decide this question, and barely allude to it; but are of opinion, that there is nothing requiring the plaintiff to apply to the commissioners of the canal for his damages.

It was further claimed, that at all events, the action of trespass would not lie, but it must be an action of *assumpsit,* or a bill in chancery.    As to the last proposed remedy, where money alone is sought, and common law proof can be had, the general rule is, that you need not go to chancery, except in case of fraud, accident or mistake.

It is said, however, that trespass will not lie for a rightful act done in a rightful manner.    The claim is here, that this is not a rightful act, done in a rightful manner; but that, if the act could be done at all, it has been done in a manner entirely wrongful: of course, we do not see how the act itself can be justified.    Trustees, or commissioners even, are liable, when they exceed their authority ; and when these defendants turned the water of this canal upon the plaintiff's land, without attempting to appropriate the land under the statute, we cannot sanction that as a legal act.    Of course, we advise that the plaintiff's rejoinder is sufficient.

The other Judges were of the same opinion, except WAITE, J., who, not having been present when the case was argued, gave no opinion.

Judgment for plaintiff.