CHEESEMAN (UNITED STATES v.). See Case No. 14,790.

## Case No. 2,634.

CHEEVER v. SHEDD et al.

[13 Blatchf. 258.][1]

Circuit Court, D. Vermont. Feb. 28, 1876.

MUNICIPAL CORPORATIONS — OPENING AND GRADING STREETS—INJURY TO ADJOINING LAND.

1. A street 50 feet in width was laid out by the proper authority through the land of C., and the damages to C. were assessed. Such damages included remuneration for the land taken, for the deprivation of any right or privilege attached to it, and for the damage done by the lay out to the land connected with. that which was covered by the street. A street of 50 feet in width was a fit and proper width for the public necessities at the locus in quo, the grade was a proper grade, and too much earth was not excavated. But, the public officers charged with doing the work cut the land at the extreme sides of the street perpendicularly, in a manner which would cause the adjoining land of C. to cave into the street, and subject him to expense and damage. On a bill filed by C. to restrain such officers from excavating in such manner, on the ground that they were doing the work without reasonable care, because they were not either providing a proper slope in the 50 feet width, or building a retaining wall in such width at their own expense: *Held*, that they had the right to excavate in such manner.

2. In the absence of statutory provisions, a municipal corporation or its agents are not liable for the consequential damage which is necessarily done, in the exercise of reasonable care, to adjoining land not taken for public use, in the execution of a public work imposed by the legislature upon the corporation, for the public benefit.

3. A municipal corporation may grade and change the grade of streets, from time to time, when it is necessary so to do, without protecting the earth or embankments of the adjoining proprietors, and is not liable for the consequential damage caused to them in adapting their land to the grade and protecting it.

[In equity. Bill by John H. Cheever for an injunction to restrain James A. Shedd, the superintendent of streets, and the street commissioners, of the city of Burlington, from constructing a highway in such a manner as to cause injury to complainant's land.]

Americus V. Spalding and Edward J. Phelps, for plaintiff.

Romeo H. Start and Torrey E. Wales, for defendants.

SHIPMAN, District Judge. In the year 1872, a new highway, of fifty feet in width, was duly laid out and established in the city of Burlington, by the proper court having jurisdiction over the subject, which highway said court directed should be completed on or before October 15th, 1873. The highway is 1,175 feet in length, extending from College street to Pearl street, and is an extension of a previously existing street, called Union street, so as to form a continuous street

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

with Maiden lane, which last two named streets are also of fifty feet in width. The new street is within about fifty rods of the business centre of Burlington, a city of 18,-000 inhabitants, and intersects two important streets, and will be considerably used for public travel. About —— feet in length and fifty feet in width of the land of John H. Cheever, the complainant, being a portion of a tract of several acres belonging to him, are taken for the street. The court which directed the lay out, the complainant appearing, and being heard thereon, adjudged that he was "entitled to no land damages in consequence of laying out and establishing said highway, the benefit to said Cheever's premises, through which said highway is laid out, being a full compensation for the land taken for said highway." It is necessary that said street should have the usual sidewalks, curbs and gutters which are customary in city streets, and it is fit and proper for the full accommodation of the public travel, that the whole street, including roadway and sidewalks, should be of fifty feet in width. The natural surface of the plaintiff's land, and of the other land over which this street passes, is uneven, being traversed by ravines or hollows, and by knolls or bluffs, and it was necessary, in order properly to construct the street, and to make a proper grade, that the knolls should be cut through and that the hollows should be filled. The city street commissioners, who had, by statute, the care and superintendence of the highways in the city, and whose duty it was "to make and repair all highways," in order to put the street in a proper condition for public use and travel, established a grade, which grade required three cuts on the land taken from the plaintiff, one of 168 feet in length and 10.2 feet in depth at the centre, one of 60 feet in length and 2.3 feet in depth at the centre, the third of 61 feet in length and a centre depth of 1.35 feet. The form of all the cuts was that of a knoll, sloping evenly each way. This grade is a proper one for the purposes of the street. All the earth which was taken from these cuts was used to fill the hollows in the street, but other earth could have been hauled for the same purpose from a greater distance. The street commissioners, in making these cuttings, cut down intentionally the soil and turf upon said street perpendicularly, or very nearly so, up to the extreme boundaries or lines of said street, and claimed and exercised the right to cut said highway perpendicularly up to the limits thereof. The soil is clay and quicksand, and the effect of the perpendicular excavation, unless the bank is protected, is, that the adjoining soil will slip, and be gradually sloughed off by the action of the rain and frost, until a slope has been formed sufficiently inclined to prevent further slipping. An unprotected perpendicular embankment of ten feet in height would be encroached upon, in two or three years, to an extent of five feet, before a proper slope

was formed. This result has already commenced upon the land of the complainant. If the city authorities have no right to cause this incidental injury to the adjoining land, their proper course is to use only such a width as will leave a sufficient slope, or to use the entire width and build a retaining wall. If the complainant is remediless, he must grade his land in conformity with the street line, or build a retaining wall himself. A suitable retaining wall would cost $500. Grading the land would probably be less expensive, and would be more advantageous to the owner of the land, in the event of any future disposition or sale of the property. The land of the complainant which has been taken for the street, is part of a large tract belonging to the complainant, used heretofore, with the buildings upon it, as a gentleman's mansion. Where the deep cut is made, the land is not ornamented with shrubbery and shade trees, as is the case with the portion adjacent to the house. The present suit is a bill for an injunction to restrain the defendants, who are the street commissioners and the superintendent of streets, from excavating in such a manner as to cause the injury to the adjacent land which has been mentioned. The superintendent has, by the city charter, the immediate care and supervision of the streets, and his duty is to see that they are properly constructed and kept in repair. After the bill was filed, a provisional injunction was granted, which is still in force. The bill proceeds upon the idea that the defendants are acting in the premises without reasonable care.

From the preceding statement, it will be seen, that the proper authority has directed the construction of a street of fifty feet in width, and has assessed the damages which will arise to the complainant from the taking of his land, which damages include all those which are immediately incident to and consequent upon the construction of the highway. An assessment of damages is for the direct and immediate damage resulting from the laying out of the highway. The owner is to be remunerated for the land taken, for the deprivation of "any right or privilege attached to it, and for the damage done by the lay out to the land connected with that which is covered by the highway, and of which it was a part." Clark v. Saybrook, 21 Conn. 313. When a part only of the land of the owner is taken for a public work, the damage which will necessarily result, from the use of the part which is taken, to the land which is not occupied by the public, is to be estimated. When the remaining land is separated by the new highway from outbuildings, or from a supply of water, or is left in unsalable condition, or unfit for occupancy, or is divided by high embankments which cause inconvenience, the effect of these and similar circumstances, and the effect which the appropriation will have in benefitting the remaining land, are to be taken into consideration in the estimate of damages. In the case of a new highway, the general grade which must be adopted, so as to conform to the existing grade of connecting streets, and so as to make a convenient highway, are obvious to the appraisers of damages, who inspect the premises and can see the injury and the special benefit which the opening of a highway must necessarily cause to the whole land. The presumption is, that the appraisal is for the value of the property taken and the damage which will specially result to the residue by such taking. But, it is truly said, that the appraisal assumes and presupposes that the highway is to be constructed with reasonable care, and if, "for want of reasonable care and skill in the construction of such work, unnecessary damage is caused, it is not warranted by the right of eminent domain." Sprague v. Worcester, 13 Gray, 195. Consequential damages which result to the remaining land, from want of reasonable care in the construction of the highway, are not included in the estimate of damages. It is contended that this highway was not constructed with reasonable care, by reason of the fact that it was excavated upon the extreme limits of the land taken, so as to cause the adjoining land to be deprived of its lateral support, and so as to inflict an actionable injury.

In order to determine whether reasonable care has been taken, it becomes necessary to consider the powers which municipal corporations possess in regard to the construction of highways, and in regard to the grade, and the alterations in the grade, of streets, whereby a consequential injury is caused to adjoining land. The defendants are public officers, and the duty has been imposed upon them by the legislature, of making and constructing highways in the city of Burlington. The law, while it imposes this duty upon public officers, also requires them to construct public works so as not wantonly or maliciously to injure adjoining proprietors, and so as to cause no unnecessary damage. They are not exempted from the obligation to use reasonable care. Mersey Dock Cases, 11 H. L. Cas. 713. The work must be done in such a reasonable and proper manner as to cause no damage which is not necessarily incident to the prosecution of the work. Thus, municipal corporations are required to build highways over water-courses in such a manner as not unreasonably to set the water back upon adjoining proprietors. Although a strip of land of seventy-five feet in width should be condemned to be taken for a street, yet, if the whole width should be excavated so as to injure adjoining proprietors, when a strip of fifty feet would amply accommodate the public needs, and such damage was not necessarily incident to a reasonable performance of the public work, such an excavation would be an unreasonable exercise of power. If the public officer "should abuse his authority, by digging down or raising up where it might

not be necessary for the reasonable repair and amendment of the road, he would be amenable to any suffering party for his damages." Callender v. Marsh, 1 Pick. 418. The public work should not be planned and should not be executed so as to inflict unnecessary damage; and, therefore, if a work is carried on in such a manner as unduly to injure the adjoining proprietor, the prosecution of such a work may be restrained by a court of equity.

But, the principle seems also to have been established, that, in the absence of statutory provisions, a municipal corporation or its agents are not liable for the consequential damage which is necessarily done, in the exercise of reasonable care, to adjoining land not taken for public use, in the execution of a public work imposed by the legislature upon the corporation, for the public benefit, although an individual who executes such an improvement upon his own land for his private benefit, might strictly be liable for such consequential injury. Sutton v. Clarke, 6 Taunt. 29; Boulton v. Crowther, 2 Barn. & C. 703; Mersey Dock Cases, 11 H. L. Cas. 713; Smith v. Washington, 20 How. [61 U. S.] 135; Radcliff v. Brooklyn, 4 Comst. [4 N. Y.] 195; Callender v. Marsh, 1 Pick. 418; O'Connor v. Pittsburgh, 18 Pa. St. 187; Hollister v. Union Co., 9 Conn. 436; Reynolds v. Shreveport, 13 La. Ann. 426; Murphy v. Chicago, 29 Ill. 279; Richardson v. Vermont Cent. R. Co., 25 Vt. 474. This doctrine is based upon the theory, that the act is done in the discharge of a duty which is imposed by the supreme power of the state upon the municipal corporation, and is done for the public benefit and not for private emolument. It is absolutely necessary for the public accommodation that streets should be raised and lowered. "Streets cannot be opened and kept in repair, or made safe or convenient for public use, without being made level, or as nearly so as the nature of the ground will permit. Hills must be cut down and hollows filled up, or in other words, the road must be 'graded' or 'reduced to a certain degree of ascent or descent,' which is the proper definition of the verb 'to grade.' If the duty imposed on the corporation requires this to be done, the power must be co-extensive with the duty." Smith v. Washington, 20 How. [61 U. S.] 148. This work, especially in a city, where population is crowded and land is valuable, will cause some damage to adjoining proprietors, and inflict hardship upon individuals. Such damage, when it has not been caused unnecessarily, is "damnum absque injuria," from the fact that the work which causes the damage is for a public benefit, and "private interests must yield to public accommodation. One cannot build his house on the top of a hill in the midst of a city, and require the grade of the street to conform to his convenience, at the expense of that of the public." Smith v. Washington, cited supra.

It is not intended that this principle should be considered as applicable to the acts of private corporations who are authorized by the legislature to construct works of a public character, such as canals or railroads, for, although such corporations are empowered to take land, upon the ground that the taking is for the public use, and although the works are to be used by the public, yet they are constructed primarily for the benefit and emolument of the private corporations who have them in charge, and who are not public agents. Hooker v. New Haven & Northampton Co., 15 Conn. 312.

In the application of these principles to the present case, it is to be observed, that it has been found that a street of fifty feet in width was a fit and proper width for the public necessities, at the place where the street was constructed, that the grade was a proper grade, and that, owing to the unevenness of the land, all the soil which was taken from the cuts was necessarily used to fill the hollows. The city was not, therefore, using an unnecessary or unreasonable quantity of land, or excavating too much earth. But, it is urged, with great force, that the defendants were not constructing the street with reasonable care, in this, that they were cutting the land at the extreme limits of the street perpendicularly, the inevitable effect of which method of construction is to cause the adjoining land to cave into the street, and to subject the owner to expense and damage; that, if an individual or private corporation excavates in such a manner that the adjacent land is deprived of the lateral support of the soil, and of adequate protection, such private person or corporation inflicts thereby an actionable injury upon the adjoining proprietor, and that, if the city desired to use their entire fifty feet of land, when such use caused an injury to the complainant, they should prevent the injury by building, at their own expense, a retaining wall, and the neglect to provide a protection is a want of reasonable care.

While all the decisions admit the doctrine that a public work must be constructed with reasonable care, the question of the extent of authority which a municipal corporation can exercise in respect to the grade of streets, whereby a consequential damage is caused to adjoining land, has been frequently before the courts. The strong weight of authority in this country is to the effect that such a corporation is authorized to grade and change the grade of streets from time to time, when it is necessary so to do, without protecting the earth or embankments of the adjoining proprietors, who are often subjected to expense in adapting their land to the grade, and in protecting their property from the consequential damage which is incident to the lowering of the street. The injury which is done to adjoining proprietors most frequently results from the changes of grade which become necessary, as a city increases in population and business, and the needs of the

public become more urgent, but not unfrequently results from the original grade upon which the street is constructed. Necessary grades and changes of grade are constantly being made in our cities, under the power to construct and repair streets, with no protection of the adjoining soil, by the municipal authorities, and such exercise of authority has been, with some exceptions, sustained by the courts of the different states. The justification has been upon the principle which has already been stated, viz., that a public officer is justified in inflicting consequential damage in the necessary prosecution of a public work imposed by the legislature upon a municipal corporation and prosecuted for the public benefit. The leading authorities have already been cited.

It may be said, that nearly all of the decisions which have been quoted refer to the regrading, or alteration of the grade, of a street. But, if there is no duty upon a city to protect the landowners against the consequences of a new excavation which is made after the street has been constructed, and after it has been long used, it is difficult to see why another standard or rule should be imposed when the street is first made passable for the public, and is to be brought to a proper level.

Although I am impressed with the seeming injustice and hardship of a method of constructing and repairing streets which throws upon the individual proprietor, if he has not been compensated for this consequential injury, a burden which would be onerous for the corporation to bear, I am constrained by the decisions of courts whose opinions are justly entitled to great weight, to hold, that a municipal corporation can properly construct and repair streets in this manner. It follows, that the defendants were constructing this street with the ordinary care which the law demands.

Let the bill be dismissed, without costs.