## GILBERT *vs.* THE SAVANNAH, GRIFFIN AND NORTH ALABAMA RAILROAD.

On account of providential cause, Jackson, Chief Justice, did not preside in this case.]

1. The charge in this case was founded on the evidence.

2. The general rule is, that in the absence of constitutional or legislative provision, where the grantees of a franchise have not exceeded the power conferred upon them and are not chargeable with want of due care, no claim can be maintained for any damage resulting from their acts.

(*a.*) The assessment of compensation for land taken for a railway covers all damages, whether foreseen or not, which result from a proper construction of the road.

3. Where a corporation, either by donation or compulsory purchase, enters upon a right of way and proceeds under its charter to construct its road, it should exercise due care and skill in its work and have a proper regard for the interests of others, and if it does not use such care, it will be liable for the consequences.

(*a.*) Suitable bridges and culverts, to convey water across the railway at or near the place where it naturally flows, are necessary for the proper construction of the road, except when they cannot be made, or where the expense of making them is greatly disproportioned to the interests to be preserved by them.

(*b.*) If a railroad, under a grant of right of way, constructs its road with prudence and care, it will not be liable to the grantor for injuries incident to such construction, but if it acts without care and skill, and by reason of failure to build necessary and proper culverts, surface water is turned out of its usual and natural channel and emptied upon the lands of the grantor, it will be liable to him or those holding under him, for damages resulting therefrom.

4. Against such actual damages the railroad cannot set off such incidental benefits to the grantor as might arise from the construction of the road over his land.

November 28, 1882.

Railroads. Damages. Negligence. Before OSCAR REESE, Esq., Judge *pro hac vice*. Carroll Superior Court. April Term, 1882.

Reported in the decision.

C. P. GORDON; G. W. AUSTIN, by brief, for plaintiff in error.

No appearance for defendant.

SPEER, Justice.

This was an action of trespass for damages done to plaintiff's land by reason of the construction of an embankment by defendant in the building of its road, by reason of which certain rain water falling was directed from its natural and ordinary channel, and thrown on the land of plaintiff, resulting in the washing away of plaintiff's soil, cutting said land into ditches and rendering it unfit for cultivation, to the damage of plaintiff five hundred dollars.

Under the evidence and charge of the court, the jury returned a verdict for the defendant. A motion for a new trial was made, which was overruled, and plaintiff excepted.

The errors assigned are on certain instructions given to the jury.

1. The court charged, that if the plaintiff inherited said land alleged to be damaged from her husband, then she holds under him, and would not be entitled to recover if he could not, and, " if you believe, from the evidence, that the embankment was made by defendant prior to the death of plaintiff's husband, which embankment caused the damage by directing the water from it natural channel or course, since his death, the fact of his death would not alter or affect the rights of the parties, but the

rights of both would be the same," there being no evi-
dence to warrant said charge.

The son of plaintiff, who was a witness in said case, tes-
tified "that the plaintiff got said land as widow of her
husband ; " "that her husband gave the right of way and
was living on said land after the embankment was made.
Witness owns one of half the lot and his father, be-
fore his death, the other half. Plaintiff derived her land
from her husband." ·

We think this evidence sufficient upon which to base
the charge complained of, and we find no error in the
charge, for the cause stated.

2, 3. The second ground of error assigned was that the
court charged, "If plaintiff inherited the land alleged to
be damaged from her husband, and he in his lifetime con-
sented for defendant to erect the embankment that caused
the alleged damage, and granted to defendant the right of
way over said land then owned by him, and the subse-
quent injury sued for was caused by said embankment,
then the plaintiff could not recover, and the same rule
would apply to one holding as a purchaser from said hus-
band."

The question that arises from this charge is, how far and
to what extent a railroad company is liable to one who
grants the right of way, for damages to lands other than
those occupied by the right of way resulting from the con-
struction of their road. The general rule recognized in this
state is that where the land of a citizen is taken against
his will, upon which to build a railroad, he should be paid
its full value in coin according to quality, form and loca-
tion, but if the owner sets up a claim for apprehended
evils and inconveniences, the incidental benefits which he
receives from the location of the road upon his property
should be allowed by way of reduction of the damages so
claimed.   30 *Ga.*, 43.

But this rule was only prescribed in a case where it was
the purpose to assess damages to the owner for seizing

his land for a right of way over which to construct a road. The damages claimed here are upon a different footing ; a claim is made for damages by reason of defendant's so improperly constructing its road by its embankments as to turn the surface water from its usual and natural flow and empty it upon the land of plaintiff. The general rule is, "that the tribunal appraising land damages condemned for railways should take into consideration all such incidental loss, inconvenience and damage as may reasonably be expected to result from the construction and use of the road in a legal and proper manner, and presumptively such incidental loss, inconvenience and damages are included in the amount assessed, and will be barred by the appraisal, whether included in the judgment or not. But there are damages resulting on the seizure of land and construction of a railroad that cannot be anticipated or foreseen, and which may arise either from the want of proper care and skill in the construction of the road, or some cause of like character. For instance, in the case of Hooker *vs.* New Haven and North Hampton Co., 14 Conn., 146, in the construction of a canal with waste weirs erected by direction of commissioners appointed to designate the route of the canal and to appraise damages, the waste water, after flowing over the land of adjoining owners, flowed upon the land of plaintiff and thereby injured it ; it was held that he was entitled to recover damages. So also in a case in 15 Conn., 312, it was ruled in the case of a defective construction of a railway, the owner of property overflowed by water by reason thereof was entitled to recover damages for such overflow, it being the duty of such owner, however, to use reasonable care, skill and diligence adapted to the occasion, to arrest the injury. The assessment of compensation for land taken for a railway covers all damages, whether foreseen or not, and whether estimated or not, which result from a proper construction of the road. But if the road is so constructed as to prevent, by reason of the want of culverts, etc., the

natural flow of water, so that it changes its course, and floods the land of another, damaging it, we see no reason why it should not respond.

Suitable bridges and culverts, to convey the water across the railway at or near the place where it naturally flows, are necessary to the proper construction of tne road, except where they cannot be made, or where the expense of making them is greatly disproportioned to the interest to be preserved by them. 35 N. H., 569; 1 Redf. on Law of Railways, 305–6, and note (6). Where a corporation, either by donation or compulsory purchase, enters upon a right of way thus obtained, and proceeds under its charter to construct a road, it should exercise due care and skill in its work, and have a proper regard for the interests of others, and if it does not use this due care, it will be liable for the consequences. 54 N. H., 545.

The general rule may thus be stated: That in the absence of constitutional or legislative provision, where the grantees of a franchise have not exceeded the power conferred upon them, and where they are not chargeable with want of due care, no claim can be maintained for any damage resulting from their acts—*actus legis nemini est damnosus.* But though so authorized to construct a work, yet if in doing so they build or locate it so unskilfully and with such want of due care as damages result therefrom, they are liable.

The power to construct a road is to do so with ordinary care and skill, because the right to do that thing with ordinary care and skill was somebody's right of property which has been taken from him by a compulsory process, and appropriated to public use; the right so bought remains in a legal sense what it was before, hence the grantee of a public franchise would not be liable for acts done with care and skill, if they do not transcend the power conferred upon them. 1 Sedgwick on Dam., 207–8.

So if the defendant below, under the power conferred, so constructed its road with prudence and care, it would

not be liable; but, on the other hand, if without such care and skill in the construction, for the want of culverts, etc., said embankment turned the surface water out of its usual and natural channel, and emptied it upon the lands of plaintiff, then it would be liable for such damages that resulted. With these views, we think the court erred in its instruction to the jury in the second ground of the motion.

4. Neither do we think, as charged in the third ground, that against such actual damages as claimed, the defendant could set off such incidental benefits to plaintiff as might arise from the construction of the road over his land. Code, §648; 17 *Ga.*, 40.

Judgment reversed.