Spear, J.
To a full understanding of the issue made and tried in the common pleas, it is proper here to state that the landowners contended that, in de *170 termining the question of damage to the residue of their lands, the jury should be informed by testimony touching the question of a probable grade of the street. It was further urged that a natural grade would be one which would bring the west end of Avery lane on a level with Columbian avenue. On the other hand it was contended by the plaintiff that the question of grade did not properly enter into the inquiry, that being a matter calling for a subsequent proceeding when it should be proposed by the Village to improve the street, and that damages, if any, by such improvement, would then be awarded the landowners including the matter of grade. In addition to this it was shown that the fall from the level of the ground at the east end of the proposed street to the grade of Columbian avenue, its western terminus, was about fifty feet, and that the grade suggested would be wholly impracticable and unreasonable. The court overruled the objection of the Village to the introduction of testimony respecting the probable grade, and evidence was introduced pro and con by both parties on that subject. The Village further insisted that it was not its purpose to make a cut in excess of five feet, and that, in that case, there would be no damage. It also, during the trial, asked leave to amend its application by setting forth therein that there is no intention or desire to make any grade on this street that will necessitate a cut in excess of five feet along the center line of the street at any time in the future. This application was overruled and the cause ordered to proceed on the theory of the law already adopted. After the evidence of the landowners had closed, the plaintiff offered in evidence a certified copy of an ordinance, passed in council the evening before, which purported to declare that there *171 was no intention of the council at any time to fix a grade which would necessitate a cut in excess of five feet, and disclaiming any intention at any time of ever establishing a grade which will require a cut in excess thereof. Also, purporting to authorize and direct the solicitor to consent to the entry of a judgment in the case pending, perpetually enjoining the plaintiff, its successors or assigns, from ever establishing a grade in excess of five feet. Also further authorizing the solicitor to make such further agreement and have the same made an order of court, as would fully protect Grant from any damage he might suffer by reason of a grade being established in the future by the Village which would necessitate a cut in excess of five feet. This ordinance was, over the objection of the defendants, admitted.
At the close of the testimony, the plaintiff requested the court to charge the jury “that in considering the question of damages to the residue you are not to consider the question of grade at all.” This was refused, to which exception was taken. The court then charged, among other things, that: “You have the right to consider the probabilities or the contingencies that may arise in the future grading of this strip of ground for street purposes; you have the right to consider the practicability of a grade running straight from the top of the hill down to Columbian avenue; you have the right to consider the practicability of grading the street three, four or five feet, as has been testified, and the erection of steps at the end of that street to connect it with Columbian avenue; you have the right to consider the contingency or probability of connecting the street by a street parallel with Columbian avenue, turning at that point and running down the side of the hill or bluff; you have *172 ■a right to consider the probability or contingency of the Village of Hyde Park or its successors excavating down to a line directly drawn from the line of Columbian avenue, the surface line of Columbian avenue, to the east line of Mr. Grant’s property. Use your own good, sound judgment on the testimony that you have heard as to whether or not, in any of these events, or the probability of these events, or contingency of these events, what damage might result to the residue of the property of Mr. Grant or Mr. Kilgore.”
To this part of the charge, also, the plaintiff excepted.
In modifying the judgment of the common pleas by setting aside the amount allowed for damages to the residue of the land, the circuit court assumed that the general verdict was neutralized by the special verdicts, and that it controlled. We assume that this was a finding of law, and not of fact, for had the court reviewed the evidence as to its weight and found the verdict unsupported, it would have reversed the judgment in boto and remanded the case for a new trial. Hence its judgment is reviewable here. If that court is right in the holding stated, then clearly its conclusion is right and its judgment should be affirmed; if, on the other hand, its holding is erroneous, then the judgment should be reversed unless the exceptions of the plaintiff to the court’s refusal to charge, and to the charge as given, were well taken.
This leads to a consideration of the character of the-case which the common pleas had before it. It was a proceeding in which the Village was attempting to-avail itself of its power of eminent domain; the power to seize and appropriate to its own use the property of the citizen whether he be willing or not. This power was delegated to the municipality by statute, *173 is in derogation of the common law, and it would seem elementary, on principle, that authority so given must be strictly pursued; at least the decisions in support of this proposition are abundant, and are, it is believed, wholly without exception. Harbeck v. Toledo, 11 Ohio St., 219, and authorities there cited. By going to the statute (section 2235), we find that the proceeding starts by the introduction of a resolution declaring the intent to appropriate, defining the purpose of the appropriation, and setting forth a pertinent description of the property designed to be appropriated. Immediately upon the introduction of such resolution, and before the passage of the same, the mayor shall cause written notice thereof to be given the owner of every piece of property sought to be appropriated. No action shall be taken upon the resolution until all the owners have had notice, and on the passage of the resolution the yeas and nays shall be taken (a two-thirds vote being required), and entered of record. Upon the passage of such resolution (section 2236), application in writing shall be made to the proper court, which shall describe as clearly as possible, the property to be taken, the object proposed, and the name of the owner of each parcel.
From this it is apparent that the property which the municipality may thus acquire is that, and that only, which is described in the resolution. It seeks to acquire that precise property, or, putting it in different form, it has already appropriated the property described, for the proceeding in court is one simply for the ascertainment of the amount of compensation to be paid the landowners. Old Col. Railroad Co. v. Miller, 125 Mass., 1; Parks v. Boston, 15 Pick., 198. And what is it that the municipality thus acquires? Why. it is the title to the property in trust *174 for the public for street purposes, and this implies the-right to adapt the land thus obtained to street uses, prominent among which is the establishment of a reasonable and proper grade. This is a distinct stab utorv duty, embraced within the requirement to keep* the streets open, in repair, and free from nuisance. The resolution in this case, and the application made-in pursuance of it, contains no qualification of the right which under the law the village might acquire. The effect, therefore, of the appropriation is to vest in the municipality every right which, legally, it could acquire. Had the council seen fit to ask less than this unqualified right, probably it could have* thus restricted the scope of the appropriation. But. it elected to ask all that the law contemplates it may possess, and that is the case made by its resolution and its application, and that is the case of which the common pleas acquired jurisdiction to adjudicate, and it had before it. none other. Had the Village excepted to the refusal of the court to allow an amendment to its application restricting its right, a different question would be presented. We are not called upon for an opinion as to that question, and do not undertake to decide it, although it is difficult to discover power in the court to permit such amendment, the amendment sought not being for the purpose of curing a defect or informality (section 6423, Revised Statutes), or for the purpose of obtaining a more full and accurate description of the property or the object proposed (section 2244, Revised Statutes), all these eleanents‘being clearly set forth, but for the purpose of making a case essentially different from that instituted by the original resolution upon which the entire proceeding was founded, and the court itself acting as a court of special and limited jurisdiction.,. *175 And if the court had no jurisdiction to allow such amendment and then proceed on the application as amended, its judgment based on such amendment would be void. Spoors v. Coen, 44 Ohio St., 497. Doubtless the Village might have accomplished the desired object by dismissing its case and beginning d& novo by a proper resolution in council, rescinding or repealing its former action, and making a new case. It suffices to say, however, that the proceeding in the common pleas was conducted to the end in that court upon the application as therein filed, and by that the rights of the parties are to be determined. The purpose of introducing the second ordinance was to show that the council had elected to ask less than its resolution and application to the common pleas demanded. Manifestly this could not avail. The scope and extent of the case of the Village having been determined by its preliminary resolution and its application, to recognize the later ordinance would have been to override the demand of the application, thus making a new case, and accomplishing indirectly what the court had refused leave to accomplish directly. The passage of the resolution was a legislative act. It was final as to the purpose to appropriate, and the'scope of the demand, and exhausted the power of the council in that regard so long as it remained unrepealed. The making of a new case would require the same formalities that the statute required for council’s action in the first instance. Nor had the council power to bind its own future action, or that of its successors, as to the matter of grade in this manner, and the court, under the issues, was without power to give effect to the council’s later action. Gas Light & Coke Co. v. Columbus, 50 Ohio St., 65; Goszler v. Georgetown, 6 Wheat., 593.
*176 If these conclusions be correct it follows that the special verdict was an idle ceremony, for, if the jury, under the instructions of the court, had found that the probable and reasonable grade would be one of five feet only it would have awarded compensation for land taken only, and would have refused to award damages to the residue. Its general verdict shows that from the evidence it found against the claim as to a five foot grade, and that after a full consideration of all the evidence in the case. This general verdict remains unimpeached. It fully warranted the judgment of the common pleas provided any evidence as to grade was competent. We are of the opinion that the theory upon which the circuit court proceeded, in its modification of the judgment, was clearly erroneous.
But it is argued that no evidence as to grade was competent; that the trial court erred in permitting such evidence, and in refusing plaintiff’s request to charge, and in its charge upon that subject, because the matter of the grade of the street is no part or incident of acquiring or appropriating the property to be used as a street, but is a part and incident of the improvement of the street, and until a proceeding to improve the street is instituted, damages, if any, to the residue of the lot owner’s property cannot be awarded or even considered. True it is that the question of grade is one of prime importance where a street which has been built upon is to be improved by paving and it is proposed to then change a grade formerly established, which is a familiar incident in the larger municipalities. In such case, by the Ohio rule, the owner of the improved lot is entitled to damages, if any he suffers, by reason of the change of grade, the rule being as held in Goodloe v. Cincinnati, *177 4 Ohio, 500; in Smith v. Cincinnati, 4 Ohio, 514; in McCombs v. Akron, 15 Ohio, 474, and in Akron v. McCombs, 18 Ohio, 229, and re-stated and held in Crawford v. Delaware, 7 Ohio St., 459, that: “If erections are made on a lot in accordance with an established grade, and the grade is afterward altered, and a substantial injury is thereby done to the owner of the lot, he is entitled to compensation.” But, as held in the case last cited, and more distinctly announced in Akron v. Chamberlain Co., 34 Ohio St., 328: “The owner of a lot abutting on an unimproved street of a city or village, in erecting buildings thereon, assumes the risk of all damage which may result from the subsequent grading and improvement of the street by the municipal authorities, if made within the reasonable exercise of their power.” It will be noted that these cases deal with damages to improvements only.
In the case before us we have the situation of unimproved lots lying upon a contemplated street as to which there had been no establishment of grade. How, then, under the rule as above stated, could the lot owner improve without taking all the risks of a future grade, and how could he sell without his purchaser taking a like risk which would naturally result in a demand for a corresponding abatement of price? We have already found that by the appropriation the Village acquired the strip appropriated for every use of a street, including the right to grade in accordance with its best judgment. Even if compensation might be afterward made in case a proceeding to pave should be instituted — and we think it could not be — why delay? It is urged that the ascertainment of a proper grade was a matter of speculation, and was in Its nature too uncertain to admit of a legal inquiry into it by evidence. We cannot see force in this *178 proposition. But if it lias significance who was responsible for it? The Village framed its case to suit, itself and if its method of stating its demand made the inquiry difficult and one which led niore or less into the field of conjecture, whose fault was it? Surely not that of the landowners.- The council had the power to fix the grade at the time of passing its resolution and before commencing its proceeding as. well as afterward, and the same was entirely practicable, and it comes with poor grace from the Village to endeavor to throw the embarrassments incident to its want of foresight in that behalf upon the landowner who had, and could have, no voice in the-matter.
It is always well, when dealing with the rights of a citizen, to keep in mind the landmarks of the constitution. Our bill of rights distinctly declares that: “Private property shall ever be held inviolate, but subservient to the public welfare,” and where taken for public use compensation in money shall be made-the owner, the amount thereof to be assessed by a jury. The principle as well as the character of the elements which enter into the term compensation is. well stated by Barclay, J., in Railroad Co. v. Ball, 5 Ohio St., at p. 575: “The provisions of the constitution of this state on this subject, are somewhat different from the provisions in the constitutions of some-of the other states. ‘Full compensation’ is required to be made to the owner in money for the appropriation of his property, as a condition precedent. To be a full compensation, it must be a remuneration or recompense for that detriment or loss to the owner in the value of his property arising from the taking-of his property in connection with the use for ‘which it is taken. Where a piece or strip of land is 'taken *179 and severed by the appropriation from its connection with other land of the owner, some elements of compensation necessarily enter into the computation besides the abstract value of the number of feet or acres of ground actually taken. These elements of compensation may be comprehended in the following: First, the abstract value of the quantity of ground taken; second, the value arising from the relative situation of the land, taken in its connection with the residue of the owner’s land from which it is severed; and third, the effect upon the value of the residue of the owner’s land arising from the uses for which the appropriation is made. These grounds of compensation will give the landowner a recompense for the loss in the value of his property, caused by the appropriation for the special purposes or use for which it is authorized.”
Compensation means full compensation, and it should be paid Avhen the title to the property taken, including the right to adapt it to street uses, is parted with by the landowner and acquired by the municipality ; nor is any reason apparent why the ascertainment of the amount of compensation should be postponed. Why should the lot owner on the one hand be put to the necessity of trusting to another suit to recover damages arising which could have been anticipated at the time of the appropriation, and why, on the other hand, should the municipality be prevented from ascertaining and paying at once and forever Avhatever just demand the landowner may have arising from the appropriation, or, in lieu thereof of exercising its election, as authorized by section 2260, to refuse to pay and thus allow its right to make the appropriation, on the terms of the assessment, to cease and determine? Why should a multiplicity of suits be *180 encouraged? Indeed why does not the rule that a multiplicity of suits should be avoided apply and control the case? There are present the proper parties, a court having jurisdiction of the parties and the subject-matter, an issue as to compensation and a jury to determine its amount. Surely this is the time and place to have compensation for all damages ascertained and fixed. This is in accord with the doctrine of Hatch v. Railroad Co., 18 Ohio St., 92, and with the opinions of text writers, and many decisions of courts of other states. Says Judge Elliott, in his work on Roads and Streets, sec. 256: “Damages are assessed once for all and the measure should be the entire loss sustained by the owner, including in one assessment all injuries resulting from the appropriation, whatever may be their character.” The same rule is given by Lewis, in his treatise on Eminent Domain, sec. 565; by Randolph in his work on the same subject, sec. 274, and by many decisions, some of which we cite: D. C. I. & W. Co. v. Middaugh, 12 Col., 434; Portland v. Kamm, 10 Ore., 383; Cummins v. Railway Co., 63 Ia., 397; VanRiper v. Essex Pub. Road Board, 38 N. J. L., 23; Edmands v. Boston, 108 Mass., 535; Railroad Co. v. Railroad Co., 17 W. Va., 812; Hooper v. Railroad Co., 69 Ala., 529; Railroad Co. v. McFarlan, 43 N. J. L., 606; Matter of Railroad Co., 89 N. Y., 453; Fellowes v. City of New Haven, 44 Conn., 240; Gilbert v. Railroad Co., 69 Ga., 396; Young v. Harrison, 17 Ga., 30; Pusey v. City of Allegheny, 98 Pa. St., 522; Buckwalter v. Bridge Co., 38 Pa. St., 281.
Giving effect to the conclusions hereinbefore stated, it follows that the trial court did not err in admitting evidence bearing upon the question of a probable future-grade of the street; that the request to charge by counsel for the Village was properly refused, and that *181 the charge of the court to the jury correctly stated the law of the case. Also, that the second ordinance, offered by the Village could have no legal bearing in determining the controversy.

The judgment of the circuit court will he reversed and that of the common pleas affirmed.

Burket, C. J., Davis, Price and Crew, JJ., concur.