RICHARD S. FELLOWES *vs.* THE CITY OF NEW HAVEN.

The duty on the part of a city of opening a public street, carries with it the right to determine the grade of the street and the manner of constructing it.

With the exercise by the city authorities of their discretion in the matter no other tribunal has any right to interfere, so long as they keep within the limits of their powers.

If, in such a case, private property is incidentally damaged, the party injured may or may not be entitled to compensation, according to the circumstances; but such damage, unless possibly in extreme cases, affords no reason for the interference of a court of equity.

Where a city, in the discharge of a duty imposed by law, has by adverse proceedings taken land for a public street and paid the damages legally assessed, it is not liable for an injury incidentally and necessarily caused to the adjoining land by the grading and working of the street in a proper manner.

It is presumed in such a case that the city, in taking and paying for the land for a street, took, as an incident, a right to establish the grade according to its own judgment, and to bring the street to that grade, without further compensation.

PETITION for an injunction, to restrain the respondent city from injuring the land of the petitioner by making excavations and fillings in working a public street upon which the land abutted; brought to the Superior Court in New Haven County. A temporary injunction was granted at the time the suit was brought. The following facts were found by the court:

The petitioner owns and occupies the land described in his petition. It is situated on Humphrey street, within the city of New Haven. The city, claiming the right so to do under the provisions of its charter and by-laws, has excavated in Humphrey street for the purpose of grading the street and the side-walk on the southern side, up to the line of the peti-

tioner's land for a distance of three hundred feet or more to a depth of from nothing up to eight feet in the deepest part, and has cut the excavation down perpendicularly at the line, so that throughout nearly the whole of the three hundred feet the fence and shrubbery of the petitioner, and from one to twelve feet in width of his land inside his fence, by reason of its own weight merely will cave and fall off into the street, unless kept in place by a retaining wall, which the city does not intend to erect.

The city threatens and intends still further to excavate up to the petitioner's line in the same manner other ortions of the street, and portions of the adjoining land or the petitioner will in like manner cave and fall off into the street if the threat and intention are carried out.

The city has also filled in the street for a distance of several hundred feet adjoining the petitioner's land to a depth of from nothing to about eight feet at the deepest part, and has placed a portion of the filling against the fence which separates the land of the petitioner from the street, so close as to crowd the fence over upon the petitioner's land, and so close that considerable quantities of the filling have passed through the fence into and upon the land of the petitioner, in some places to the extent of two or three feet in width.

The city threatens and intends to fill still further along the fence, so as to crowd the fence over upon the petitioner's land still more, and so that still more of the filling will pass into and upon the land of the petitioner inside his fence.

The portion of the street filled, and yet to be filled, according to the grade assumed by the city, cannot be filled up to the line without the effect aforesaid upon the fence and land of the petitioner unless a restraining wall is erected upon the line, which wall the city does not intend to erect. Such a sustaining and retaining wall will cost several thousand dollars.

In addition to the large expense of the walls it will cost a large sum to adjust the premises of the petitioner to the changed condition of the street consequent upon the excava-

tion and filling. The charter and by-laws of the city are made part of the finding.

Upon the foregoing facts the question whether the temporary injunction granted in this case should be made perpetual, modified or vacated was reserved, for the advice of this court.

*G. H. Watrous* and *T. E. Doolittle*, with whom was *W. L. Bennett*, for the petitioner.

1. The city, in removing the lateral support from the land of the petitioner, is doing that which an individual would be held liable for doing. The owner of land is entitled to have his land in its natural state supported by the adjoining soil. This rule of law is so firmly established and so little controverted, that it is hardly necessary to quote authorities upholding it. *McGuire* v. *Grant*, 25 N. Jer., 356; *Lasala* v. *Holbrook*, 4 Paige, 169; *Farrand* v. *Marshall*, 19 Barb., 380, and 21 id., 409; *Foley* v. *Wyeth*, 2 Allen, 132; *Humphreys* v. *Brogden*, 12 Queen Bench, 739; Washb. on Easements, 429. The authorities are collected and reviewed in an article on "The natural right of support from neighboring soil," 1 Am. Law Review, 1. If a railroad corporation should do the act complained of, or a turnpike company, although it is chartered to build a public highway, such corporation would be liable as an individual is liable. *Richardson* v. *Vermont Central R. R. Co.*, 25 Verm., 465. It has frequently been decided that railroad corporations are liable for such consequential damages as individuals would be liable for, and we claim this to be law in Connecticut. *Boughton* v. *Carter*, 18 Johns., 405; *Hay* v. *Cohoes Co.*, 2 Comst., 159; *Tinsman* v. *Belvedere &c. R. R. Co.*, 26 N. Jer., 148; *Evansville &c. R. R. Co.* v. *Dick*, 9 Ind., 433; *Hooker* v. *N. Haven & Northampton Co.*, 14 Conn., 156, and 15 id., 312; *Denslow* v. *N. Haven & Northampton Co.*, 16 id., 98; *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 id., 294. It is true that an individual would be liable for the acts which the respondents intend doing, and that a corporation chartered to make a highway would have no more power to do them than an individual. How is it that a city can claim to do them? What sovereign power has it,

that it may do these acts without regard to consequences, even though the consequences be that property is entirely destroyed? If an individual desires to slide his neighbor's earth into his pit, he shall not do it unless his neighbor will sell him the right. The city may take the right, but why should it take it without paying for it? We claim that the city can only do, upon the land taken, that which the former owner could do; that when, in consequence of its acts, it destroys property or deprives the owner of its use, if this is more than an individual might have done, it *takes* property, within at least the spirit and intention of the constitution; and that not only are we sustained in this position by strong authority, but that, owing to the constant wrongs and injustice occasioned by any other construction, the current of modern decision is strongly in our favor. The cases that are directly against this position are not numerous, and among all that are cited on the other side there are only five or six decided in different states, which hold that a city is not liable in cases like the present. The leading case among them, and which has given birth to all the others, is *Radcliff's Exrs.* v. *Mayor &c. of Brooklyn,* 4 Comst., 195. But Mr. Sedgwick, in his work on Damages, (p. 112,) says of this case:—"It appears to me the decision is an unfortunate one, although sound, *perhaps, on a strict construction of the constitutional clause.* But it is to be regretted that the court felt itself bound to apply a strict instead of a liberal interpretation. The tendency of our legislation, in matters of public improvement, is undoubtedly to sacrifice the individual to the community; and we cannot attach too much importance to those provisions of our fundamental law which are framed to protect private property against encroachments, which, though sanctioned by legislative enactment, are in truth often dictated by private interests." Mr. Waterman, in his work on Trespass (vol. 2, § 666,) quotes these remarks with approval, and adds—"It would seem as though, on general principles, the owners of property sustaining injury from this cause were entitled to compensation." In *Goodall* v. *City of Milwaukee,* 5 Wis., 42, and *Eaton* v. *Boston & Montreal R. R. Co.,* 51 N. Hamp.,

532, and in the Ohio cases, the case of *Radcliff's Exrs.* v. *Mayor &c. of Brooklyn,* is directly overruled. The authority of it, and the doctrine it supports, are much weakened by the dissatisfaction expressed in many of the cases at the hardship and injustice to which the principle adopted has led. The Iowa court pronounces the state of the law "lamentable." *Creal* v. *City of Keokuk,* 4 G. Greene, 53. "This, it must be admitted, is very harsh law, says the Pennsylvania court. *In re Ridge Street,* 29 Penn. S. R., 395. And the Wisconsin court uses similar language in *Alexander* v. *City of Milwaukee,* 16 Wis., 247. We ask this court to follow a more wise and liberal construction, both of the charter of the city and of the constitution, and to hold that when the city takes land for a highway, it takes all the rights the former owner had to use his land for such purpose, and no more; that if it wishes to take the vested rights of an adjoining proprietor, it must first make compensation. The courts in nearly all the states have, either in express decisions, or in the language which they have used, shown that they regard this rule as the only just one. Thus in Massachusetts, Shaw, C. J., says, in *Thayer* v. *City of Boston,* 19 Pick., 516, after having stated the opposite doctrine of *damnum absque injuriâ,* "But the court are of the opinion that this argument, if pressed to all its consequences, and made the foundation of an inflexible rule, would often lead to very unjust results. We think that the city of Boston may be liable in an action on the case, *where acts are done by its authority which would warrant a like action against an individual.*" See also *Stetson* v. *Faxon,* 19 Pick., 147; *Rounds* v. *Mumford,* 2 R. Isl., 154; *Rhodes* v. *City of Cincinnati,* 10 Ohio, 159; *McCombs* v. *Akron,* 15 id., 474; *Akron* v. *McCombs,* 18 id., 229; *Crawford* v. *Delaware,* 7 Ohio S. R., 459; *City of Louisville* v. *Louisville Rolling Mill Co.,* 3 Bush, 416; *Meares* v. *Commissioners of Wilmington,* 9 Ired. Law R., 73; *Goodall* v. *City of Milwaukee,* 5 Wis., 42; *Weeks* v. *City of Milwaukee,* 10 id., 269; *Pettigrew* v. *Evansville,* 25 id., 227; *Arimond* v. *Green Bay Co.,* 31 id., 316, 335; *Pumpelly* v. *Green Bay Co.,* 13 Wall., 166; *Nevins* v. *City of Peoria,* 41 Ill., 515; *City of Aurora* v.

*Reed,* 57 id., 29, 33; *City of Jacksonville* v. *Lambert,* 62 id., 519; *Eaton* v. *Boston & Montreal R. R. Co.,* 51 N. Hamp., 504; *Thompson* v. *Androscoggin River Improvement Co.,* 54 id., 545.

2.   The argument thus far has been directed to the question of the right of the city, by its use of the land embraced in the street, to destroy the support of the petitioner's land, and thus cause him consequential damages for which they are not liable.    We come now to the other question in the case, whether the city can fill in upon our land, where it lies below the level of the street, without being bound to make us compensation, or liable in damages.    It is difficult to see how our claim at this point can be resisted with any show of reason, since there is here an actual appropriation of the land of the petitioner to the use of the public.    If the public may use two or three feet of the land of the petitioner as a foundation for their road-bed, and may throw sand and earth upon it, without making compensation, the word "taking" has lost all meaning.    *Pumpelly* v. *Green Bay Co.,* 13 Wall., 181; *Pettigrew* . v. *Evansville,* 25 Wis., 227; *Nevins* v. *City of Peoria,* 41 Ill., 515.    In that part of the case first argued, the city will say that though they destroy and prevent the petitioner from using his land, they do not *use* it themselves, it is not converted to the public use.    But here they do actually use and enjoy the land, and must have it to support their road.    There is here clearly a proposed taking for which compensation should be first made.

*D. R. Wright,* for the respondents.

1.   No claim can be made in this case that the corporation did not exercise reasonable care and skill in the performance of the work resolved upon.    There is no finding in the record justifying such a claim; and in the absence of such a finding, the court will presume that the work, so far as it has already been done, has been performed with reasonable care and skill; and that the remainder will be completed in like manner, and without unnecessary vexation or injury to the petitioner.

2.   There is no provision in the charter of the city of New

Haven, nor any general statute of the state, creating a liability for consequential damages to an adjoining owner, arising from the acts complained of. We are, therefore, remitted to the common law, to determine both the rights of the corporation and of the petitioner.

3. The damages, if any, caused by the cuttings and fill-ings are indirect and consequential in their character, and not such as entitle the petitioner to compensation; neither is he entitled to be reimbursed for any expense he may be put to when the proposed work is completed. There is no *taking* of his lands in any legal or constitutional sense of that term. Such is the doctrine in all the states of the Union where the question has arisen, (with the exception of the state of Ohio, and possibly some qualification of the doctrine in the state of Kentucky,) and also in the federal courts and in England. The following cases establish this proposition. In the state of Massachusetts. *Callender* v. *Marsh*, 1 Pick., 418; *Brown* v. *City of Lowell*, 8 Met., 172. In the state of Connecticut. *Hollister* v. *Union Co.*, 9 Conn., 436; *Hooker* v. *N. Haven & Northampton Co.*, 14 id., 146; *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 id., 294; *Clark* v. *Saybrook*, id., 313; *Skinner* v. *Hartford Bridge Co.*, 29 id., 523; *Burritt* v. *City of New Haven*, 42 id., 174. In the state of Maine. *Mason* v. *Kennebec & Portland R. R. Co.*, 31 Maine, 215; *Hovey* v. *Mayo*, 43 id., 322. In the state of Rhode Island. *Rounds* v. *Mumford*, 2 R. Isl., 154. In the state of New York. *In re Furman St.*, 17 Wend., 649; *Graves* v. *Otis*, 2 Hill, 466; *Wilson* v. *Mayor &c.*, *of N. York*, 1 Denio, 595; *Benedict* v. *Goyt*, 3 Barb., 459; *Waddell* v. *Mayor &c.*, *of N. York*, 8 id., 95; *Radcliff's Exrs.* v. *Mayor &c.*, *of Brooklyn*, 4 N. York, 195; *Mills* v. *City of Brooklyn*, 32 id., 489. In the state of Pennsylvania. *Green* v. *Reading*, 9 Watts, 382; *Henry* v. *Pittsburgh & Alleghany Bridge Co.*, 8 Watts & Serg., 85; *Charlton* v. *Allegheny City*, 1 Grant's Cas., 208; *O'Connor* v. *City of Pittsburgh*, 18 Penn. S. R., 187; *City of Reading* v. *Keppleman*, 61 id., 233. In the state of Indiana. *Snyder* v. *Rockport*, 6 Ind., 237; *City of Lafayette* v. *Spencer*, 14 id., 399; *Macy* v. *City of Indianapolis*, 17 id., 267; *City of*

*Lafayette* v. *Bush,* 19 id., 326; *City of Lafayette* v. *Fowler,* 34 id., 140; *City of Terre Haute* v. *Turner,* 36 id., 522. In the state of Illinois. *Roberts* v. *City of Chicago,* 26 Ill., 249; *Murphy* v. *City of Chicago,* 29 id., 279, 287. In the state of Iowa. *Creal* v. *City of Keokuk,* 4 G. Greene, 47; *Russell* v. *City of Burlington,* 30 Iowa, 262; *City of Burlington* v. *Gilbert,* 31 id., 356. In the state of Missouri. *Taylor* v. *City of St. Louis,* 14 Misso., 20; *Hoffman* v. *City of St. Louis,* 15 id., 651. In the state of Arkansas. *Simmons* v. *City of Camden,* 26 Ark., 277. In the state of Tennessee. *Humes* v. *Mayor &c., of Knoxville,* 1 Humph., 403. In the state of Mississippi. *White* v. *Yazoo City,* 27 Miss., 357. In the state of Georgia. *Markham* v. *Mayor &c., of Atlanta,* 23 Geo., 402; *Mayor &c., of Rome* v. *Omberg,* 28 id., 46. In the state of Louisiana. *Reynolds* v. *Shreveport,* 13 Louis. An. R., 426. In the state of Florida. *Dorman* v. *City of Jacksonville,* 13 Florida, 538. In the state of Wisconsin. *Alexander* v. *City of Milwaukee,* 16 Wis., 247, 256. In the United States courts. *Goszler* v. *Corporation of Georgetown,* 6 Wheat., 593; *Smith* v. *Corporation of Washington,* 20 How., 135. In the courts of England. *Cast Plate Manufacturers* v. *Meredith,* 4 T. R., 796; *Sutton* v. *Clarke,* 6 Taunt., 29; *Hall* v. *Smith,* 2 Bing., 156. This current of authorities would be entirely unbroken but for certain decisions in the states of Kentucky and Ohio, which we perhaps ought briefly to notice. The former state adopted the doctrine of the other states in the case of *Keasy* v. *City of Louisville,* 4 Dana, 154, decided in 1836; but in the later case of *City of Louisville* v. *Louisville Rolling Mill Co.,* 3 Bush, 416, decided in 1867, the right to recover was made to depend on the extraordinary and peculiar character of the injuries received in that particular case. Judge Robertson dissented; holding, in accordance with the prevailing doctrine, that the magnitude of the injury made no difference in the principle involved. This decision is condemned by Judge Dillon in his work on Municipal Corporations. (Vol. 2, note to § 783.) The cases cited on the other side from the Ohio reports, go upon the ground that, if the cutting down of a street be for the good of all and the

injury of one, there should be compensation. It is a singular fact, that the two cases of *Scovill* v. *Geddings*, 7 Ohio, 211, and that of *Hickox* v. *City of Cleveland*, 8 Ohio, 543, accord with the authorities in the other states; while in the case of *Crawford* v. *Delaware*, 7 Ohio S. R., 459, it is frankly admitted that the doctrine adopted is in "*direct conflict with the decisions both in England and America.*" All the other cases referred to are reviewed in *City of Cincinnati* v. *Penny*, 21 Ohio S. R., 499, and the broad doctrine of the earlier cases is much modified. This last case makes the municipal liability depend upon circumstances, a position that cannot be maintained on principle. Bronson, C. J., in the case of *Radcliff's Exrs.* v. *Mayor &c., of Brooklyn*, before cited, remarks that these cases are "in conflict with many other cases, and cannot be law beyond the state of Ohio." And the Supreme Court of Wisconsin, referring to the Ohio cases, declares them not to be law.

4. It must be conceded for all the purposes of this case that Humphrey street has been regularly laid out, and that damages, or damages and benefits as the case may be, were assessed to the adjoining proprietors; so that the petitioner, or those under whom he holds, were compensated for the original *taking*. Such compensation not only embraced the direct damages resulting from the *taking*, but also, (as shown by the numerous cases cited,) the incidental and consequential damages which flow from such taking. The sliding of the dirt down the embankment and upon his land is not a *fresh taking*, but is incidental to, and consequential upon, the original taking. This is true on principle, and is well settled in the books. In the first place on principle. The land is taken for the express purpose of laying out a street; convenience, taste, and economy require it should be of uniform width; it cannot be of such uniform width when laid over uneven ground, without the incidental land-slide when there is a cutting, and the overflow when there is a filling. These incidents and consequences are, therefore, *inseparable from the taking*, and are contemplated and paid for by the assessment of damages *at the time of the taking*. If they are not

incidents, then it must happen in every case where a street is laid over uneven ground, that the line of the street must *notch out* at every elevation, so as to prevent a land-slide, and at every depression, so as to avoid an overflow of dirt. The bare statement is sufficient to show the absurdity of the claim. It is a principle of common sense as well as of common law, that when the land is taken for a definite purpose, everything goes with it which is necessary to accomplish that purpose. And it is so decided in the books. *Hollister* v. *Union Co.*, 9 Conn., 436; *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 id., 294; *Imlay* v. *Union Branch R. R. Co.*, 26 id., 260; *Cone* v. *City of Hartford*, 28 id., 376; *Skinner* v. *Hartford Bridge Co.*, 29 id., 536; *Callender* v. *Marsh.* 1 Pick., 429; 2 Dillon Municp. Corp., § 487.

CARPENTER, J. There is in the city of New Haven a public highway called Humphrey street. The city authorities in grading this street and fitting it for public travel propose to excavate in some places to the depth of eight feet, and in others to raise the bed of the road some eight feet above the adjoining ground. In consequence of such grading the petitioner's land, which is described in the petition, and which bounds on the street, will in the one case cave and fall into the street, and in the other will be covered to some extent with the earth and gravel used in filling and raising the street. This can only be avoided by building supporting and restraining walls at great expense, which walls the city declines to build. The Superior Court temporarily enjoined the respondents, and the question whether the injunction shall be made perpetual is reserved for the advice of this court.

The public laws of this state and the charter of the city of New Haven impose upon the respondents the duty of constructing and maintaining within the limits of the city all necessary highways for the accommodation of the public travel. This they are required to do, not for their own pecuniary benefit, but for the benefit of the public at large. It is not a valuable privilege, but a heavy burden.

While engaged in the performance of this duty they were

interrupted, at the instance of the petitioner, by a mandate from the Superior Court suspending further proceedings, and we are now asked to continue the injunction until the antici- pated damage can be ascertained and paid.

In support of this request the petitioner claims that the injury to his land in the manner stated constitutes a taking for public use, which can only be done by making proper com- pensation. There is no taking of the title; and upon the facts stated it is not necessarily a taking of an easement. Assuming that the petitioner's land will be used for building purposes, it must be graded by removing and filling so as to conform to the grade of the street. In that event the caving or falling off, and the overflow caused by the city, will do the petitioner no harm, as he will have all the land free from any burden or easement. Now there is nothing in this case to show that the petitioner will not use his land precisely in that manner. If he does he is clearly not entitled to an injunc tion, as his land is not taken in any proper sense for public use.

But if he desires to use it in a different manner and for different purposes, then it may require some expense to adjust his land to the grade of the street. When that is done how- ever he still has his land; none of it has in fact been taken. He has been subjected to some expense, but in that he is like many others, perhaps a large majority, of those who own city lots. Such expenses are necessarily involved in all such improvements; and to hold that they constitute a taking of private property for public use would impose intolerable bur- dens upon towns and cities. Besides, if the incidental injury thus sustained is to be regarded as having been considered in estimating damages to the petitioner when the street was laid out, then he has been fully compensated and cannot now complain.

But if it be conceded that the petitioner will sustain an actionable injury it does not follow that an injunction will lie. A court of equity will not ordinarily take cognizance of such injuries, but will leave parties to their remedy at law. There is nothing in this case to make it an exception to the rule.

If this petition is sustained the effect will be that the Superior Court will exercise a supervisory and controlling power over a municipal corporation while engaged in the performance of a governmental duty. The Superior Court has power by statute to compel such a corporation to perform its duty, but it has no power to control the discretion and judgment of the corporation in respect to the manner of performing it. We have no precedent for a case like this in our own reports, and we are not aware that any such case has ever been sustained by the Superior Court. The novelty of the proceeding, if not an argument against it, is at least some evidence that the prevailing sense of the profession has been against it.

In respect to authorities outside of our own state, it is remarkable that among the many cases cited by both parties, after the most laborious research, only two of them were petitions in chancery seeking to restrain the corporation from grading the street according to its own judgment. The first of these is *Goszler* v. *Corporation of Georgetown*, 6 Wheaton, 593. In that case the Supreme Court of the United States affirmed the judgment of the Circuit Court dismissing the bill. The second is *City of Louisville* v. *Louisville Rolling Mill Co.*, 4 Bush, (Ky.,) 416. In that case the improvement contemplated by the city would cause damage to the petitioners amounting nearly to a destruction of their property. In addition to that, it was proposed to assess the petitioners for benefits. The extreme hardship of the case induced a majority of the court to sustain the bill. That certainly is not a controlling authority in this case, as the circumstances of the two cases are very different.

But independent of precedent or authority, we see nothing in reason that will sustain this petition. The street was laid out by the respondents, and the duty of opening it for public travel devolved upon them. That duty carries with it the right to determine the grade and the manner of opening the street. With the exercise of their judgment and discretion in this matter no other tribunal has any right to interfere so long as they keep within the limits of their powers. Within those limits they are and must be entirely independent of the

judiciary. If, within those limits, private property is incidentally damaged, the party injured may or may not be entitled to compensation, according to the circumstances, but such damage, unless possibly in extreme cases, affords no reason for the interference of a court of equity.

In this case the damage to the property is manifestly slight, and is of such a nature that compensation, if the petitioner is entitled to it, can easily be made. For these reasons, as well as for others hereinafter stated, we ought to advise the Superior Court to dismiss the bill.

The principal question, however, which occupied the attention of counsel was the question of compensation. As that was discussed at great length and with great ability, and as it is a question of great practical importance, perhaps we ought to dispose of it.

The discussion took a wide range and a large number of cases were cited and commented on; but when the question at issue is carefully considered and clearly stated, it will be seen that many of the cases cited are not applicable.

The question is, when a municipal corporation, in the discharge of a duty imposed by law, and which is strictly governmental, has taken land *in invitum*, and assessed and paid the damages, is it liable for the injury incidentally and necessarily sustained by the adjoining land in consequence of working and grading the street in a proper manner? As thus stated it will be seen that the case is to be distinguished from a class of cases in which the officers of a town or city, acting *colore officii*, by accident or by a mistake in judgment, unnecessarily commit a trespass or do an injury outside of the limits of the highway.

It is also to be distinguished from another and a large class of cases in which corporations are chartered for the purpose of promoting some public enterprise, but for their own private advantage, such as railroad, canal and turnpike companies. Such corporations, although engaged in enterprises which are for public use, so as to justify the taking of land under the right of eminent domain, are organized for the purpose of making a profit from their investment, and they expect ulti-

mately to be reimbursed as well as to receive an annual percentage of profits. Such corporations stand on very different grounds from towns and cities, which are compelled by law to construct and maintain public highways without any hope or expectation of deriving any pecuniary benefit therefrom. This distinction was clearly taken by this court in the case of *Hooker* v. *The New Haven & Northampton Co.*, 15 Conn., 312. In that case, in speaking of some English cases cited, the court say:—"Those were actions, not against a corporation deriving a benefit from an injury to an individual, but suits against commissioners or trustees, appointed to execute a public trust or duty, representing the public, and having themselves no personal interest therein."

Thus that case, and many other cases cited from this state and other states, are not directly in point, and do not materially affect the question. We therefore pass them without further notice.

The doctrine is advanced in some of the cases that corporations like individuals are liable for damage done to the land of others; and this is relied on by the petitioner as sustaining his claim. That doctrine, when applied to a case like this, is liable to confuse and mislead. The corporation is restricted in its use of the land and must use it for a highway; an individual may use it for any lawful purpose he pleases. The corporation uses it for the benefit of the public at large; an individual uses it for his own benefit. The corporation derives no pecuniary advantage from its use; while an individual does. If the corporation was an unrestricted owner, like an individual, or if an individual was bound to use it only for a highway, it would be proper to apply the same rule to both. But so long as their circumstances and their relations to the land and the public differ so widely, reasoning from one to the other is fallacious. That doctrine may well apply where corporations exceed their powers and thereby injure others, and where private corporations act for themselves and not for the public; but it has no application to municipal corporations acting within the scope of their powers, in the discharge of a governmental duty.

We come now to a discussion of the precise question involved in this case. It will be noticed that the authorities which are in point are not very numerous. So far as we have been able to discover the right to compensation has been denied in every state in the Union where the question has arisen except in the state of Ohio. Perhaps also the state of North Carolina should be excepted. We will not stop to enumerate the cases thus decided, but will content ourselves with a brief reference to the Ohio cases to see how far they sustain the petitioner's claim.

We repeat here what we have already said in another connection, that not one of those cases was a petition in chancery seeking the interference of a court of equity with a municipal corporation in the discharge of a governmental duty.

The last decision in that state on this subject which we have seen is the case of *City of Cincinnati* v. *Penny*, 21 Ohio St. R., 499. That case was decided in 1871. The case was this: The city made an excavation in a public street for the purpose of constructing a sewer. The foundation walls of the plaintiff's building, which were four feet below the surface of the ground, were thereby weakened and the building injured. The court held that the city was not liable. The court states the question and answers it as follows: "Are municipal corporations, under the laws of this state, liable for damages to proprietors of lots abutting on streets and alleys, for injuries to buildings erected thereon, resulting from the exercise of their corporate powers in improving or appropriating such streets and alleys to public uses, while acting within the scope of their municipal authority, and without negligence or malice? Strictly, this question should be answered in the negative. But in the ordinary application of the principle involved, neither an unqualified affirmative nor negative answer would be a fair statement of the rule of law upon this subject."

An affirmative answer is qualified by holding that the abutting proprietor must not have contributed to his injury by his own negligence or indiscretion; that he must have acted prudently under the circumstances of fact which then surrounded

him, and must have taken into consideration the right of the municipality to make future improvements in the streets, and to appropriate them to other public uses, within the scope of its authority.

A negative answer is thus qualified:—"That the municipality, before such lot was improved, had taken no such action in the matter of improving or appropriating such street or alley to public uses as to reasonably indicate that the uses and improvements of the street or alley were permanently fixed and appropriated."

We remark here, parenthetically, that this qualification would exempt these respondents from liability in the state of Ohio.

The court then proceeds to put its own interpretation upon the cases previously decided in that state. We must accept that interpretation as the law of that state to-day. We quote at length, as it obviates the necessity of any further reference to the cases cited.

"We believe that all the cases heretofore decided by this court upon this subject can be reconciled upon the principle stated; although the language employed by different judges in delivering opinions may not be reconcilable. In *Goodloe* v. *Cincinnati*, 4 Ohio, 500, it was held that a municipal cor_poration was liable for injuries to a house where the street was illegally and maliciously cut down by the municipal authorities. In *Smith* v. *Cincinnati*, 4 Ohio, 514, it was held, that the corporation was liable for such injuries, in the absence of malice, if its acts were illegal. In *Scovill* v. *Geddings*, 7 Ohio, 562, it was held that the agents of the corporation were not liable for injuries to a house and lot, where no unnecessary damage was done, and they acted in good faith and under the authority of the trustees. In *Hickox* v. *Cleveland*, 8 Ohio, 543, it was held that the city was not liable where the municipal authorities acted without negligence and within the scope of municipal authority. *Rhodes* v. *Cleveland*, 10 Ohio, 159, was a case where the injury complained of was to the land (and not to structures thereon) by causing it to be overflowed by water from drains and ditches.

The corporation was held liable. But a distinction may well be taken between that case and one for injury to a building erected on a lot without reference to proper and reasonable drainage of the street. The next cases are *McCombs* v. *Akron*, 15 Ohio, 474, and *Akron* v. *McCombs*, 18 Ohio, 229. In these cases it was held that a municipal corporation is liable for injuries resulting from a change of grade, whereby the means of access to a building erected on an abutting lot were cut off or impaired. It appears however that the building was erected with reference to an established grade, and the injury resulted from a change in the grade. Avery, J., in delivering the opinion of the court in the latter case, says: ' He [McCombs] had made his improvements with an express view to the level and grade of Howard street, adjoining which the building stood.'" *Crawford* v. *Delaware*, 7 Ohio, 459, is then cited and commented on, and the doctrine of the case approved. In that case it was decided, " that when such corporation, in the exercise of its legal powers, makes a reasonable and proper grade of its streets, without touching or doing unnecessary injury to the unimproved property of owners along the streets so graded, and when such grading is not unreasonably, improperly or wantonly done by such authorities, they are not guilty of such a wrong as will make them liable to action, even though some damage may result to such owners of property along the street by such grading."

The court then refers to the case of *The Street Railway* v. *Cumminsville*, 14 Ohio St. R., 523, and quotes from it approvingly as follows:—" The acquisition of land for a highway of any kind, carries with it the right to put the ground in a suitable condition to answer the purposes of the acquisition, and to this public right all private rights of lot owners are necessarily subordinated. If, before the public has exercised this right through the regularly constituted authorities, the lot is improved, the owner must make the improvement with reference to the reasonable and proper exercise of the right thereafter; and cannot complain if his means of access to his improvements are impaired through his own indiscretion. But when the public has taken possession and regularly

defined the interests and improvements necessary for its uses, establishing grades, &c., lot owners have the right to assume this exercise of authority as a final decision of the wants of the public, and to make their improvements in reference to it."

We have dwelt upon this case, not for the purpose of showing what the law of Connecticut is, for in some respects the law of this state is confessedly different, but for the purpose of showing that even in Ohio the law is so that if the petitioner was suing in their courts he probably could not recover. The current of authority, therefore, as it seems to us, is decidedly against the claim of the petitioner.

If we look at this question independently of decided cases we shall come to the same result. When a man purchases real estate to be used for a particular purpose, he necessarily acquires the right, so far as the grantor is concerned, to use all lawful means to accomplish that purpose, and the grantor cannot complain of any incidental injury resulting from such use. Presumptively he demanded and received compensation accordingly. So when the city of New Haven took a portion of the petitioner's land for the purposes of a street, it must be presumed that they took, as an incident thereto, a right to establish the grade according to their own judgment, and to bring the street to that grade without further compensation. This presumption necessarily arises from the nature of the transaction and the well established and well known powers and duties of municipal corporations in respect to streets and highways. The obligation to construct and maintain public streets carries with it the right to determine the grade; and such a grade must be established as will accommodate the public travel. And whenever from any cause public convenience demands that the grade shall be changed, it is the duty of the corporation to change it. All this must have been known and considered at the time the street was laid out.

This view of the case imposes no hardship upon the individual land owner. The topography of the land through which a street runs is apparent to the eye; the connection with other streets at either end is equally apparent. The grade can be determined and the amount of cutting and filling

can be estimated with reasonable certainty. The probable use of the land abutting on the street, and its value as affected by opening the street, are proper subjects of consideration in awarding damages and assessing benefits. These considerations are not limited to the present grade and use, but appraisers will invariably forecast the future. In addition to this it will be remembered that appraisers and juries called upon to award damages in such cases are always disposed, and justly so, to make full compensation.

It is absurd to claim that the city could only prepare a road-bed upon the surface of the ground as it then was. Both reason and experience teach us that that is not the way in which public improvements are made in our cities and large towns. The road-bed must of necessity be lowered in some places and raised in others. If by the original lay-out the city acquired the right to do this to any extent, where is the limit? Was it at one foot or at eight feet? Or was it at some intermediate point? Manifestly the court can establish no limit to the power and discretion of the city so long as they act reasonably and with due regard to the rights of others. In cases of extreme hardship possibly there may be a remedy, as in the Kentucky case above referred to. Such cases however are of rare occurrence and are not to be anticipated.

Our conclusion therefore is, upon principle and authority, that the petitioner, in contemplation of law, has already received compensation for all the damage he will sustain, and that the petition on that ground also must be dismissed.

In this opinion the other judges concurred.