BARTHOLOMEW HEALEY *vs.* THE CITY OF NEW HAVEN.

Towns and cities charged with the maintenance of public highways may change the grade from time to time as the wants of the public may require, without being liable for the incidental and necessary damage caused thereby to the adjoining owners.

Whenever land is taken for a public highway or street it is presumed that damages are assessed with reference to any possible use of the land for such a purpose, and where the face of the land is such, or the relations of the proposed street to other streets are such, as to render it probable that changes in the grade will be required, damages are supposed to be estimated accordingly.

The town or city is practically the owner of the land for all the purposes of a highway, and so long as it is used strictly for those purposes, with due regard for the rights of others, no liability attaches.

If however the work is improperly or negligently done, thereby causing damage to others, the corporation like an individual is liable.

Towns and cities must necessarily judge of the wants of the public and of the necessity for any particular improvement, and their decision must be final unless reviewed by the courts in a proceeding of the nature of an appeal.

An owner upon a city street, the grade of which had been changed and he thereby subjected to great expense in adjusting his land to the new grade, claimed that he had abstained from forcible resistance to the acts of the city and from instituting legal proceedings to stop the work, by reason of a promise of the city authorities that the city should compensate him, which it afterwards, and after the work was done, refused to do. A statute was passed about the time this promise was claimed to have been made, and soon after repealed, authorizing cities to make compensation in such cases, but it appeared, as the case stood, that the promise was made before the statute was passed. Held that, the city not being at that time authorized to make such compensation, the promise of the agents of the city was without authority of law and not binding on the city.

It seems however that if the statute was in force when the promise was made, (as to which the case was open for further inquiry,) so that the work might be said to be undertaken and the promise made in view of the statute, the land-owner might be entitled to redress.

And held that the promise in question could not operate as an estoppel upon the city, because it did not appear that the land-owner had been misled by it into a change of conduct from which he had sustained injury—the intention to resist the acts of the city by force having been an unlawful one, while the institution of legal proceedings would necessarily have been unsuccessful.

Where it is alleged that such work by a city has been negligently and unskillfully done, it is necessary to allege in what the negligence or unskillfulness consisted.

BILL IN EQUITY, brought to the Superior Court in the county of New Haven.

The bill alleged that the petitioner was, and for more than fifteen years had been, the owner of certain real estate in the city of New Haven, on Congress Avenue, (describing it;) that in the year 1861 he erected upon the land sundry buildings, consisting of stores, dwellings and other buildings, in all at an expense of about twelve thousand dollars; that the buildings were constructed to correspond with the grade of Congress Avenue as then established, and that he built a sidewalk in front of the premises on Congress Avenue to correspond with the grade as then given him, and that all of the work was done under the direction and to the satisfaction and acceptance of the city. That afterwards, in the year 1867, the common council of the city ordered that the board of road commissioners should cause Congress Avenue between George and Hubbard streets, (which included the section running past the petitioner's premises,) to be graded, by lowering the hill and filling up the valley in such manner and to such an extent as they might deem that the public interest required; that the order was carried into effect by raising and establishing the grade of the street in front of the petitioner's premises several feet above its former grade as established by the city, which change of grade and the filling up of the street in front of his premises necessitated the taking up of the sidewalk, and the filling in and re-paving of the same, and the raising up of the buildings, to correspond with the new grade so established,

which the petitioner was obliged to do and did at an expense of more than seven thousand dollars; and that all the work by him thus done was to the acceptance and satisfaction of the city, and was done to save the property from becoming utterly valueless to him. That after the raising of the buildings and sidewalk to correspond with the new grade of the street as then the second time established by the city, at so great expense and inconvenience, the city refused to make him just compensation therefor, and ever since has so refused, although frequently requested and demanded. That afterwards, in the year 1874, the common council of the city made another order, again changing the grade of the street in front of the petitioner's premises, to the effect that the board of road commissioners cause Congress Avenue in front of the petitioner's premises to be the third time graded, and that the sidewalks on both sides of the avenue be re-graded, re-curbed, and re-paved by the proprietors of the lands fronting upon the avenue upon both sides to the acceptance of the board of road commissioners, which order was approved by the mayor of the city, and the work of re-grading and filling up the street in front of the petitioner's premises was again commenced by the city against the remonstrance and protest of the petitioner; that such contemplated work was unnecessary, uncalled for, and would be ruinous to him, his premises and. his business, and that he was about resisting the execution of the order by physical force, or by obtaining an order of injunction from the Superior Court restraining the city from executing the order, when he was assured by the board of road commissioners, the mayor, the corporation counsel, and other officers of the city, that if he would not oppose the contemplated work, or resort to the courts for an injunction, he should be fully compensated in money by the city for all the damages he should sustain by the filling up of the street and such new change of grade as should be established under the order, and for the raising of his buildings to correspond thereto; and that relying upon these assurances and promises, and believing in the truth of the same, he was prevailed upon by the city not to make forcible opposition, or apply to the

court for an injunction restraining the execution of the order, as he otherwise would have done but for such assurances and promises. That after he had been thus quieted in his opposition to the work the city commenced the work of again filling up the street in front of his premises, which made it necessary for him to again take up his sidewalk while the same was in perfect repair, to re-grade and fill up and re-lay the same at a great expense, and to again raise up his buildings to correspond with the grade thus the third time established by the city, at an expense to him of more than thirty-five hundred dollars. That after the passage of the order and the commencement of the work and after the petitioner had commenced the raising of his buildings to correspond with the new grade, the city, or some one in its interest, in fraud of the petitioner's rights, procured the legislature, without his knowledge or consent, to repeal the law allowing the city to compensate him for the damage thus occasioned; that he knew nothing of such legislation until long after it had been had, and after the injuries had been done, and too late for him to appeal from the order, when he was informed by the city that the law under which it promised compensation for the damage had been repealed; and that the city thereupon refused and ever since has refused to compensate him for the damage, or to reimburse him for his expenses thus incurred, although frequently requested and demanded, and although admitting the damage to him and the justness of his claim therefor over and above all possible benefits to him by reason of such change of grade. That in addition to the expenses of twice raising his buildings, and thrice filling up, re-curbing and re-paving the sidewalk, to correspond with the unnecessary shifting and changing grades of the street ordered by the city, he was subjected to great loss and damage by the negligence and unskillful manner in which the work was conducted and unnecessary delays in completing it, and the loss of tenants and of trade in consequence of the work and of the raising of the buildings and sidewalk, such damage amounting to the sum of fifteen thousand dollars. The petitioner prayed that the court, on finding the allegations of the petition

to be true, would decree that the city of New Haven pay to him his damages as set forth in the petition, or grant such other relief as might be proper.

The respondents demurred to the petition and the case was reserved, upon the demurrer, for the advice of this court.

*S. L. Bronson* and *R. G. Osborn*, in support of the demurrer.

1. A city has a right to determine the grade of a public street, and whenever from any cause public convenience demands that the grade shall be changed, it is the duty of the city to change it, and such change may be made without compensation to the adjoining owners; the only liability on the part of the city being when it acts illegally or maliciously, or does the work unskillfully. *Fellowes* v. *City of New Haven*, 44 Conn., 240, and numerous cases cited in the brief of the respondents' counsel on page 246; *Cheever* v. *Shedd*, 13 Blatchf., 258; *City of Pontiac* v. *Carter*, 32 Mich., 164; *City of Detroit* v. *Beckman*, 34 id., 125; *Ashley* v. *Port Huron*, 35 id., 296; *Shawneetown* v. *Mason*, 82 Ill., 337; *Inman* v. *Tripp*, 11 R. Isl., 524; *Mootry* v. *Danbury*, 45 Conn., 550. It does not affect the question that the case is one of peculiar hardship. *Hollister* v. *Union Co.*, 9 Conn., 436; *Callender* v. *Marsh*, 1 Pick., 418; *Rounds* v. *Mumford*, 2 R. Isl., 154; *Benedict* v. *Goyt*, 3 Barb., 459; *O'Connor* v. *Pittsburgh*, 18 Penn. St., 187; *Creal* v. *Keokuk*, 4 G. Green, 47; *Taylor* v. *St. Louis*, 14 Misso., 20; *Smith* v. *Washington*, 20 How., 135.

2. If any remedy exists it should be by a special action on the case. *Merriam* v. *City of Meriden*, 43 Conn.; 173; *Weed* v. *Greenwich*, 45 id., 170; *Mootry* v. *Danbury*, id., 550.

3. The petitioner has no vested rights under the statute authorizing cities to make compensation in such a case. This statute was added to our laws by the revision of 1875, and therefore after the order for this change of grade was made. The city therefore had at the time no power to make such a contract. *Burritt* v. *New Haven*, 42 Conn., 174. If the city had no power to make such a contract its officers could not bind the city by their promises. But if the statute had been

in existence at the time, yet it was repealed on the 24th of June, 1875, and by its repeal the right of the petitioner to the remedy under it ceased. Cooley on Const. Lim., 362.

*E. Munson,* contra.

Prior to 1861 the city, having control over the streets and sidewalks within its corporate limits, established the grade of Congress Avenue in front of the petitioner's premises. In 1861 the petitioner erected his buildings and laid his sidewalks to correspond with the grade of the street as then established. In 1867 the city changed the grade, which necessitated the raising of his buildings and sidewalks several feet, to correspond with such new grade. In 1874 the city again, for the third time, changed the grade, which again necessitated the raising of his buildings and sidewalks several feet, to correspond with the new grade, at an expense of several thousand dollars, besides greater damage from the interruption to his business as a merchant. The last order for change of grade was made in view of a public statute allowing compensation for damages incident to such change. Rev. Stat. (1875), p. 236, sec. 31. This statute was repealed June 24th, 1875, after most of or all the injury had been done. Acts of 1875, p. 9. While this statute was in force the city officials promised the petitioner remuneration for the injury if he would not resist the execution of the work. In view of these facts it is clear that the petitioner presents a strong case for relief. We contend that he is entitled to the relief sought.

1. The city has the right, and it is its duty under the charter, to grant relief, by providing full compensation for the injury. Charter, secs. 16, 27, 28, 29. And the statute law of the state clothed it with full power to make compensation, if its charter powers were doubtful. Rev. Stat. (1875), p. 236, sec. 31. Its failure to have the damages ascertained, and to provide the means to pay the same, was an omission of duty which renders it liable.

2. The repeal of the statute, (under which repeal the respondents try to shelter themselves from responsibility,) did

not affect the rights of the petitioner that had vested under it. Whatever rights he had during its life, he now has, regardless of its repeal. They are vested rights. *City of Elgin* v. *Eaton*, 83 Ill., 535. The marginal note of that case is as follows: " The right of the owner to damages is determined by the law in force at the time of the entry upon the public improvement, and cannot be affected by subsequent legislation."

3. The dedication of a street to public use, under a grade established of record by the city, gives the adjacent owner a right to consider that grade as the established grade of the street, and if abutting proprietors use reasonable care and judgment in making improvements corresponding to such grade, and the city afterwards changes the grade, causing damage to the property, the city is liable for such damages. *Street Railway Co.* v. *Cumminsville*, 14 Ohio St., 523; *Cincinnati* v. *Penny*, 21 id., 499; *Youngstown* v. *Moore*, 30 id., 133; *McCombs* v. *Akron*, 15 Ohio, 474; *Lane* v. *Boston*, 125 Mass., 519; *Geraghty* v. *Boston*, 120 id., 416; *Barker* v. *Taunton*, 119 id., 392; *Ryan* v. *Boston*, 118 id., 248; *Nevins* v. *City of Peoria*, 41 Ill., 502; *Fellowes* v. *New Haven*, 44 Conn., 240; *Louisville* v. *Louisville Rolling Mill Co.*, 3 Bush, 416; *Nebraska City* v. *Lampkin*, 6 Neb., 27. Good faith between the city and the citizen requires, when the city opens a street, establishes its grade, and dedicates it to the public, inviting and licensing improvements to be made corresponding to such grade, that buildings so erected shall not be rendered worthless by a regrade of the street, without compensation for the damage done. Besides, the charter of the city (1857,) sec. 34, provides that any highway or street or walk so laid out or altered shall be and remain for the use for which it shall have been so laid out or altered. "*Shall be and remain*" evidently means that there shall be no shifting of grades, after they are once established, to the detriment of those whose buildings are imperiled by the change, without compensation for the injury.

4. The city, having promised compensation to the petitioner if he would acquiesce and let the work go on, is estopped from interposing a defence inconsistent with those

promises, after he had acquiesced and relied in good faith upon them while the work of his ruin went on. *Pence v.* *Arbuckle,* 22 Minn., 417; *Continental Bank* v. *Bank of Commonwealth,* 50 N. York, 575; *Blair* v. *Wait,* 69 id., 113; *Kinney* v. *Farnsworth,* 17 Conn., 360.

5. The proceedings of the city taken together are of such an extraordinary character, and so peculiarly injurious to the petitioner, that its acts should not be done without compensation to him, even if there is no liability in ordinary cases. In the language of the court in *Louisville* v. *Louisville Rolling Mill Co.,* before cited, "there can not be any hardship in this, under the peculiar facts in this case, for, if the improvement is of great public utility, it will not be an onerous burden for the public to pay the damage. If the damages are great they should not be imposed to the destruction of the individual proprietor; if they are not great the burden on the public will be light. If too heavy to be imposed on the public, this should admonish the authorities not to impose them on the individual proprietors."

CARPENTER, J. The petition alleges in substance that the petitioner is the owner of certain buildings in the city of New Haven on Congress Avenue, erected in the year 1861 to correspond with the then established grade of the street; that in the year 1867 the grade was changed, and he was thereby compelled to raise his buildings to adapt them to the grade as changed, at an expense of more than $7,000, for which he received no compensation; that in the year 1874 the common council ordered another change of grade, and commenced the work of re-grading and filling up the street against the remonstrance and protest of the petitioner; that he was about to resist the work by physical force, or by obtaining an injunction, when he was assured by the board of road commissioners, the mayor, the corporation counsel and other officers, that if he would refrain from doing so he should be fully compensated by the city; that relying upon these assurances he did refrain from resisting the work physically and by legal proceedings; and that thereupon the work was consummated,

and he was obliged to raise his buildings, re-lay his side-walk, curb stones, &c., at an expense of over $3,500.

It is then alleged that after the commencement of said work, and after the petitioner had commenced raising his buildings, some one, in the interest of the city and in fraud of the petitioner's rights, caused or procured the legislature, without his knowledge or consent, to repeal a statute law allowing the city to make compensation, and that he did not know of the repeal until after it was too late to appeal from the order making the improvement, and that the city now refuses to pay the damages thus sustained. He also alleges that he has suffered damage by reason of negligence and the unskillful manner of doing the work, unnecessary delay, &c., claiming to recover $15,000 damage, with a prayer for general relief. To this petition the respondents demurred, and the question of its sufficiency is reserved for the advice of this court.

1. The law in this state must be regarded as settled, that towns and cities charged with the maintenance of public highways may change the grade of streets and highways from time to time, as the wants of the public may require, without being liable for the incidental and necessary damage caused thereby to the adjoining proprietors. And this rule applies in chancery as well as at law. It must be confessed however that this rule lodges in the hands of the local authorities a power, which, if not positively dangerous, is certainly liable to be abused, and a rigorous application of the rule will sometimes operate harshly and even unjustly. Hence the law differs in different jurisdictions. In Illinois compensation is secured by a constitutional provision. In Massachusetts it is provided for by statute. In Ohio the courts upon general principles have established a qualified liability. The abutting proprietors are required to build with reference not only to the existing grade but also to the probable wants of the public in the future, and if they use due diligence in that respect and suffer damage in consequence of a subsequent change of grade they are entitled to compensation. This rule, while

essentially just, is nevertheless difficult of application and productive of litigation.

Our own rule, as it seems to us, is founded upon correct principles. If properly guarded, and applied only to cases within its reason, it is easily applied and need not operate unjustly. It is based mainly on two considerations, which involve only familiar and well recognized principles. 1st. Whenever land is taken for a street or highway it is presumed that damages are assessed with reference to any possible use of the land for such a purpose; and where the face of the land is such, or the relations of the proposed street to other streets are such, as to render it probable that changes in the grade will be required, damages are supposed to be estimated accordingly. 2d. The ordinary principle that every man has a right to use his own land as he pleases provided he does no unnecessary damage to his neighbor. The town or city, as the case may be, is practically the owner of the land for all the purposes of a highway. So long as it is used strictly for those purposes with due regard for the rights of others no liability attaches. If however the work is improperly or negligently done, thereby causing damage to others, the corporation like an individual is liable. *Mootry* v. *Danbury*, 45 Conn., 550. If the improvement is maliciously made for the purpose of injuring another—if such a case can be supposed and proved—it would seem that the corporation, or those acting in its name, ought to be liable as a private person would be under like circumstances.

If the authorities act unnecessarily and unreasonably a superficial view of the subject would suggest that the town or city should be liable; but liability on that ground, besides being productive of inconvenience, would not rest upon any sound principle. Towns and cities must necessarily judge of the wants of the public and of the necessity for any given improvement, and their decision must be final unless reviewed by the courts in a proceeding in the nature of an appeal. To hold that the courts might collaterally pass upon that question in an action for damages would be productive of much mischief.

The cases in which injustice may be done from any such cause it is believed will be rare. For such as may exist a remedy by way of an appeal will better protect the rights and interests of all concerned than an action for damages.

From these considerations it is apparent that the petitioner stands on no higher ground in equity than in law.

2. The petitioner claims that he has some equities growing out of the promise by the officials who acted in behalf of the city that his damages should be paid, in connection with the statute, which was in force for a short time, providing for the payment of damages in such cases.

If that law was in force when the improvement was commenced and the alleged promise made, so that it could be said that the improvement was undertaken and the assurance given under and in view of the law, it may be that the petitioner would be entitled to some redress, either in law or equity. The form of the remedy under the Practice Act now in force is immaterial. But the fair import of the petition is that the change of grade was ordered by the common council, the work necessary to carry it into effect was commenced, and the alleged promise to pay damages was made, in the year 1874. We think the law as it then stood, or at least as it stood when the promises were made, must govern this transaction throughout. The statute law referred to had no force as such during the year 1874. It was not enacted by the legislature of that year in the regular course of legislation. It first came into existence as a law on the first day of January, 1875, and then only by force of the general statute carrying into effect the work of the revisors. The parties therefore making the promise were acting without authority, and their action does not bind the city. Should it hereafter appear that the work of re-grading and filling up the street was commenced and the promises referred to made after the law took effect, or if during the progress of the work the law took effect and the promise was subsequently made, the aspect of the case may be entirely changed.

This view of the case renders it unnecessary to consider the effect of the repeal of the statute upon the petitioner's rights.

3. It is further claimed that these promises operated to mislead the petitioner, and consequently that the city is now estopped from denying its liability to pay damages.

The party claiming the benefit of an estoppel must show that he relied upon the words or conduct of the adverse party and was thereby induced to change his position injuriously to himself if the words and representations may be shown to be untrue. The change of position alleged by the petitioner is an omission to do two things: first, to resist the work of the improvement by physical force, and second, to institute legal proceedings to restrain the work. Physical resistance would have been illegal. It was clearly his duty not to resort to it. Refraining from a violation of law was not such a change as the law of estoppel requires. Legal proceedings would have been futile. *Fellowes* v. *New Haven*, 44 Conn., 240. A failure to institute legal proceedings when the court can see that such proceedings if instituted must necessarily be unsuccessful, is not such a change of position as will justify the application of the doctrine of estoppel.

4. There is not a sufficient allegation of negligence and unskillfulness, inasmuch as it is not alleged in what the negligence or unskillfulness consisted.

We think the bill is insufficient.

In this opinion the other judges concurred.